**In the Matter of a Member of the Bar of the Supreme Court of Delaware: Stephen P. DOUGHTY, Respondent.**

No. 163, 2003.

Supreme Court of Delaware.

Submitted: May 28, 2003.
Decided: Sept. 17, 2003.

---

Mary Susan Much, Wilmington, DE, for Office of Disciplinary Counsel.

Charles J. Slanina, Tybout Redfearn & Pell, Wilmington, DE, for Respondent.

Before VEASEY, Chief Justice, BERGER, and STEELE, Justices.

PER CURIAM:

This is a lawyer disciplinary proceeding. The respondent, Stephen Doughty, is a Delaware lawyer who is a partner in a New Jersey law firm. The primary allegations are that Doughty, for many years, practiced law in Delaware without maintaining a bona fide office in Delaware, failed to maintain his books and records in compliance with Delaware law, and falsely certified to this Court that his books and records were being maintained in compliance with Delaware law and that his tax obligations were being met. While Doughty admitted most of the facts underlying the petition for discipline, he denied that he knowingly or intentionally engaged in any misconduct.

After a hearing, the Board on Professional Responsibility concluded that Doughty's conduct had resulted only in violations of his tax and record-keeping obligations under Rules 1.15(b) and 1.15(d) of the Delaware Lawyers' Rules of Professional Conduct. The Board found that Doughty had been negligent, but his negligence had caused little or no actual or potential injury to clients. Accordingly, the Board issued its report to this Court, recommending that Doughty receive a private admonition, subject to a two-year period of probation. The Office of Disciplinary Counsel filed objections to the Board's recommendation, contending that Doughty's misconduct warrants a public reprimand and a period of probation. After review, the Court has concluded that a public reprimand and probation are warranted under the facts of this case.

### Facts

Doughty was admitted to the Delaware Bar in 1987. Since 1994, he has been a partner in the law firm of Lyons, Doughty & Veldhuis (the Firm), which has its main office in New Jersey. The Firm's practice is exclusively a creditors' rights practice. The Firm represents only lenders, and the majority of its practice involves collecting outstanding balances for those lenders. It

is a busy, high-volume practice. Doughty is responsible, among other things, for the Firm's Delaware cases, which account for about 20% of the Firm's practice. He handles collections and bankruptcy litigation work in Delaware. The ODC alleged, although Doughty denied, that he practiced law in Delaware without maintaining a bona fide law office in Delaware.[1] Before November 2001, Doughty had no responsibility for the Firm's accounting and bookkeeping functions, which were handled by New Jersey staff.

In November 2001, Martin Zukoff, CPA, auditor for the Lawyers' Fund for Client Protection, conducted a random audit of the Firm's books and records. Zukoff issued a report in December 2001, which included the following findings: (i) as of March 1998, the Firm had ceased reconciling the end-of-month cash balance in the Firm's escrow account relative to the total of client balances; (ii) since 1998, there were numerous monthly variances in the escrow account, which variances appeared to be greater than the total balance of client funds; and (iii) since 1994, Doughty and the Firm had failed to obtain a business license from the State of Delaware or City of Wilmington and had failed to file or pay any Delaware taxes. Joseph McCullough, auditor for the ODC, conducted a follow-up audit in July 2002. McCullough found $31,000 in escrow checks that had been outstanding from 1995 through January 2001.

Based on the findings in the audit reports, the ODC filed a petition for discipline on November 7, 2002, alleging the following violations of the Delaware Lawyers' Rules of Professional Conduct: (i) one count of misconduct in violation of Rule 1.15(b) (failing to promptly deliver property belonging to another);[2] (ii) one count of misconduct in violation of Rule 1.15(d) (books and records violations);[3] (iii) one count of misconduct in violation of Rule 3.4(c) (failure to obey court rules);[4]

---

1. The ODC's petition alleged: "Respondent's office address on file with the Clerk of the Supreme Court of Delaware was 1148 Pulaski Highway, PMB313, Bear Delaware 19701. This address was a post mailbox located at Mailboxes, Inc. on Pulaski Highway. Any calls received at the Delaware office number, on file with the Supreme Court, were automatically forwarded to the New Jersey office." Doughty admitted this allegation in his response to the petition for discipline but presented testimony at the Board hearing that he in fact had a reciprocal office arrangement with a Delaware lawyer that met the "bona fide" office requirement.

2. Del. Lawyers' R. Prof. Conduct Rule 1.15(b) provides, in part, that "a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property." The ODC alleged that Doughty violated Rule 1.15(b) by failing to take reasonably prompt steps to disburse over $31,000 in fiduciary funds from 1995 through January 2001.

3. Del. Lawyers' R. Prof. Conduct Rule 1.15(d) provides specific, detailed requirements for the maintenance of a lawyer's books and records. Rule 1.15(d)(9) specifically provides that "no funds which should have been disbursed shall remain in the [escrow] account." The ODC alleged that Doughty violated Rule 1.15(d) by failing, for over three years, to reconcile the escrow account cash balance to the total of client balances, by failing to identify client funds, and by allowing escrow checks to remain outstanding since as far back as 1995.

4. Del. Lawyers' R. Prof. Conduct Rule 3.4(c) provides, in part, that a lawyer "shall not knowingly disobey an obligation under the rules of a tribunal." The ODC alleged that Doughty violated this rule by failing to maintain a bona fide office for the practice of law in Delaware as required by rules of the Supreme Court, Superior Court, and Court of Common Pleas.

(iv) two counts of misconduct in violation of Rule 8.4(c) (engaging in conduct involving misrepresentation);[5] and (v) two counts of misconduct in violation of Rule 8.4(d) (engaging in conduct prejudicial to the administration of justice).[6]

The Board held a hearing on January 7, 2003 and heard testimony from three witnesses: Greg Witsch, the Firm's office administrator; David Lyons, the Firm's managing partner; and Doughty. The testimony established the demands that the Firm's high-volume practice places on its accounting system. The Firm receives, on average, 3,500 to 4,000 payments per month, which total between $600,000 and $1,000,000. Until recently, the payments were all run through a single escrow account. The payments come from numerous sources and vary in amounts that range from a few dollars or cents to lump sum payments of thousands of dollars. The accounting system must properly identify and apply these various types of payments. The payments must be properly allocated between the debtor's principal balance, interest, court costs and attorneys fees. A further complication in the accounting process arises when funds are received that cannot be attributed to the debtor's balance and thus cannot be remitted to the client. These excess, or imprest, funds can arise under many different circumstances and create a need for funds to be returned.

The testimony at the hearing established that the Firm for many years used specialized third-party accounting software, which allowed the Firm to account for all debtor balances, apply payments properly, and handle its wide variety of fee agreements with clients. The testimony further established that many of the Firm's major clients conducted annual audits of the Firm's records of their respective accounts, and the audits revealed no deficiencies in the Firm's accounting process. One problem with the accounting software, however, was that its "preliminary reports" showed debtor payments that were owed to the client but did not show other funds, such as imprest funds, that were not owed to the client. This apparently complicated the reconciliation of the total cash balance in the escrow account with the total of the client balance listings complicated. Nonetheless, the Firm apparently was able to perform monthly client balance reconciliations up until March 1998.

In March 1998, the Firm began having problems with its monthly client balance reconciliations when it switched to a new computer system (while continuing to use the same software). The Firm was no longer able to reconcile the total cash balance in the escrow account with the client balance listings. After several months of trying, without success, to perform the reconciliations, the Firm's bookkeeping staff gave up trying. An error, which was later discovered in the software, was cor-

---

**5.** Del. Lawyers' R. Prof. Conduct Rule 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." The ODC alleged that Doughty violated Rule 8.4(c) by filing Certificates of Compliance with this Court for 1999, 2000, and 2001, which falsely stated that Doughty's law practice books and records were maintained in compliance with Rule 1.15 and by falsely stating on his Certificates of Compliance for 1996, 1997, 1998, 1999, 2000, and 2001 that

he was meeting all of his tax filing obligations.

**6.** Del. Lawyers' R. Prof. Conduct Rule 8.4(d) provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." The ODC alleged that Doughty violated Rule 8.4(d) by failing to file and pay various Delaware taxes from 1996 to 2001 and by filing false Certificates of Compliance for the years 1999, 2000, and 2001.

rected by the vendor. Before Zukoff's audit, Doughty had been unaware of the Firm's accounting difficulties and had had no role in attempting to resolve the problem.

The testimony at the hearing established that, following Zukoff's audit, the Firm initiated steps to try to correct all of the deficiencies identified in the audit reports. With respect to the escrow account reconciliations, three of the Firm's employees, along with an additional employee (hired specifically for this purpose from the Firm's outside accountant's office), undertook the process of going back to the last unreconciled statement and tracing every entry by hand to make sure each entry was properly accounted for. Over a period of several weeks, the staff was able to reduce to roughly $2000 the $100,000 discrepancy cited in Zukoff's audit report. The testimony at the hearing suggested that the remaining $2000 discrepancy was only a discrepancy on paper and did not likely represent unidentified client funds.[7] To avoid problems in the future, the Firm has created 15 or 16 individual escrow accounts for its major clients.[8]

With respect to the $31,000 in outstanding escrow account checks, the testimony at the hearing established that the Firm had taken steps to address the issue. Any check over a year old was voided. The Firm researched current addresses for debtors and reissued checks. In the case of outstanding checks to clients, the Firm contacted the clients and reissued remittances to them. As of the date of the hearing, most of the reissued checks had cleared. Those that had not cleared would escheat to the State of New Jersey. To avoid future problems, the Firm implemented a policy of reviewing outstanding checks every three to six months and taking prompt steps to deal with checks that had not cleared.

With respect to the Firm's Delaware taxes, it was undisputed that, before Zukoff's audit, the Firm had never filed Delaware corporate or gross receipts tax returns. The Firm's managing partner testified that it was his responsibility to decide which tax returns to file. He could not recall how he reached the conclusion that no Delaware returns needed to be filed. After the audit, the Firm's outside accountants prepared the information needed to file the returns. As a result of this process, the Firm determined that it owed no gross receipts taxes for any year and that it owed $24 for corporate taxes ($1 for 1997 and $23 for 2000). These returns were filed and the taxes were paid.

With respect to the Firm's Delaware office, the ODC's petition alleged that Doughty had failed to maintain a bona fide office for the practice of law in Delaware as defined in Supreme Court Rule 12,[9] and

---

7. This conclusion was based on the fact that the total escrow account balance itself reconciled every month to the bank statement, that regular audits by lenders did not uncover any problems, and that the Firm had received no client or third-party complaints.

8. There was testimony that the Firm had self-reported its escrow account problems to New Jersey disciplinary authorities after receiving Zukoff's audit report. The New Jersey authorities apparently were satisfied with the measures the Firm took to reconcile the problem and did not take any further disciplinary action against the Firm or its lawyers, notwithstanding the ongoing $2000 discrepancy.

9. Supreme Court Rule 12(a) provides, in part, that "all papers filed with the Court shall be signed by an attorney who is an active member of the Bar of this Court and who maintains an office in Delaware for the practice of law." Supreme Court Rule 12(d) defines an office for the practice of law as "a bona fide office maintained in this State for the practice of law in which the attorney practices by being there a substantial and scheduled portion of time during ordinary business hours in

incorporated by reference in Rule 90 of the Superior Court Civil Rules and Court of Common Pleas Civil Rules.[10] The ODC alleged that Doughty's failure to maintain a bona fide office in Delaware constituted a disciplinary violation because it manifested a failure to obey court rules.

In response to the ODC's allegations, Doughty testified that when the Firm was formed in 1994, he established a reciprocal office-sharing arrangement with a lawyer in Delaware who was then renting space in New Jersey. At first, Doughty used the Delaware office for service of process and delivery of mail and, on rare occasions, for depositions. Later, Doughty redirected the Firm's mail to a post office box he rented near his home in Bear, Delaware from which he would personally pick up the Firm's mail.

Doughty testified that he had specifically considered the requirements for maintaining a law office in Delaware when the Firm formed in 1994. He testified that, other than Supreme Court Rule 12, which at the time required the maintenance of an office for signing pleadings in the Supreme Court but did not define the term "office,"[11] he did not find any rule that required more than the reciprocal office-sharing arrangement he had established.

At the hearing, Doughty did not concede that his reciprocal office arrangement failed to constitute a "bona fide" office for the practice of law under Supreme Court Rule 12. Nonetheless, Doughty testified that once he became aware of the ODC's concern about the Firm's Delaware office arrangements, the Firm addressed the concern by subleasing office space where Doughty has access to support staff and where he now spends more than half of his office time.

At the conclusion of the hearing, the Board requested supplemental memoranda on the issue of the appropriate sanction. The ODC argued that a public reprimand and period of probation was the only sanction consistent with the ABA Standards for Imposing Lawyer Sanctions as well as this Court's prior, relevant disciplinary decisions. In support of its position, the ODC argued that, as the only Delaware lawyer in his firm, Doughty alone was responsible for the Firm's failure to know and comply with Delaware's tax and record-keeping requirements and that his negligent misrepresentations to the Court concerning his alleged compliance with his tax and record-keeping obligations require a public reprimand. Furthermore, the ODC argued that, while the rules concerning the maintenance of a law office in Delaware changed between 1994 and 1999,[12] Doughty should have known of

---

the traditional work week....A bona fide office is more than a mail drop, a summer home which is unattended during a substantial portion of the year or an answering, telephone forwarding, secretarial or similar service." DEL. SUPR. CT. R. 12(d) (2003).

10. The ODC asserted that by failing to fulfill the bona fide office requirement of Supreme Court Rule 12, Doughty also violated Superior Court Civil Rule 90(a) and Court of Common Pleas Civil Rule 90(a). Those rules, which are identical, provide: "Except as provided in Rule 90.1 [pro hac vice admission], only members of the Bar of the Supreme Court of this State currently entitled to prac-

tice in that Court who maintain an office in Delaware for the practice of law shall be entitled to practice as an attorney in this Court."

11. The definition of "office for the practice of law" in Supreme Court Rule 12(d) was not added until January 1, 1995.

12. In its supplemental memorandum, the ODC acknowledged that between January 1, 1995 and April 6, 1999, Supreme Court Rule 12 allowed an active member of the Delaware Bar with an office outside of Delaware to sign papers to be filed with the Court as long as the lawyer had a Delaware address that was

these rule changes. Accordingly, the ODC contends that he should be reprimanded for violating court rules since at least 1999 for practicing law before Delaware courts without maintaining a bona fide office for the practice of law in Delaware as required by court rules.

Doughty, on the other hand, contended that his conduct was neither intentional nor knowing. Therefore, Doughty argued, the Board should conclude that his negligent conduct did not warrant disciplinary action and should dismiss the petition for discipline. Alternatively, Doughty asserted that, to the extent the Board found disciplinary violations, it should not impose more than a private admonition.

### The Board's Decision

After considering the parties' supplemental filings, the Board issued its Report and Recommendation dated March 25, 2003. The Board's report did not contain a specific factual finding regarding whether Doughty's prior office arrangements failed to comply with court rules, as the ODC had alleged. Instead, the Board concluded that even if Doughty's "activity was sufficient to pass the hurdle of Rule 12, [Doughty] did not knowingly disobey the obligations of Rule 12." Because DLRPC Rule 3.4(c) forbids "knowing" disobedience of a court rule, the Board concluded that, whether or not Doughty violated the bona fide office requirement, Doughty had not done so knowingly and thus had not violated DLRPC Rule 3.4(c).

Furthermore, the Board concluded that Doughty had violated DLRPC Rules 1.15(b) and 1.15(d) with respect to the

Firm's failure to reconcile its escrow account properly and the Firm's failure to ensure escrow checks were promptly delivered and cashed. The Board concluded, and Doughty admitted, that he should have known of these failures. Nonetheless, with respect to his false certifications to this Court as part of his Annual Registration Statements, the Board concluded that Doughty's conduct was negligent and that "mere negligence" could not constitute a violation of DLRPC Rules 8.4(c) or 8.4(d).

The Board concluded that Doughty's negligent violation of his record-keeping obligations posed a minimal threat of potential injury in this case because the Firm had other controls in place with respect to its trust account. The Board found that, while Doughty's misconduct was aggravated because of his substantial experience in the practice of law and his commission of multiple offenses, there were several substantial mitigating factors, including Doughty's: (i) lack of prior disciplinary record; (ii) absence of dishonest or selfish motive; (iii) timely good faith remedial efforts; (iv) full and free disclosure to the ODC; and (v) cooperative attitude toward the proceedings. In light of these findings, the Board concluded that a private admonition was the sanction consistent with this Court's prior disciplinary decisions. The Board found that the Court's decisions in *In re Benson*[13] and *In re Macpherson–Johnson*,[14] both of which resulted in public reprimands to the respondents, were distinguishable from Doughty's case. The Board concluded that the respondents in those cases had virtually no

---

not a post office box at which the lawyer could receive service of process. Effective April 6, 1999, *Supreme Court Rule 12* was amended to eliminate this provision. Since April 6, 1999, *Supreme Court Rule 12* has required all Delaware lawyers to maintain a

bona office in Delaware in order to appear before the Delaware Supreme Court.

**13.** 774 A.2d 258 (Del.2001).

**14.** 2001 WL 760866 (Del. June 14, 2001).

controls or safeguards over their escrow accounts, and the respondents' failures with respect to their record-keeping and tax obligations were more extensive.

### Supreme Court Review

The ODC has filed objections to the Board's Report and Recommendation to which Doughty has responded. The ODC contends: (i) the Board erred in its determination that actual knowledge of a court rule was a prerequisite for a finding that Doughty violated DLRPC Rule 3.4(c); (ii) the Board erred in holding that intent is a prerequisite for a finding that Doughty violated DLRPC Rules 8.4(c) and 8.4(d); and (iii) the Board erred in recommending a private disciplinary sanction. We review these claims *seriatim*. In doing so, we recognize our obligation to review the record independently to determine whether there is substantial evidence to support the Board's factual findings.[15] We review the Board's conclusions of law de novo.[16]

### A. Bona Fide Office for the Practice of Law

The Board did not make any specific factual finding about whether Doughty's office arrangements satisfied the bona fide office requirement set forth in Supreme Court Rule 12. Instead, the Board concluded that, even assuming Doughty had failed to maintain a bona fide office for the practice of law in Delaware, this failure did not constitute a violation of DLRPC Rule 3.4(c), which states that a lawyer shall not

"knowingly disobey an obligation under the rules of a tribunal." The Board concluded, to the extent Doughty had violated any court rule, he had not done so knowingly.

The ODC objects to this finding. The ODC asserts that, as a Delaware lawyer, Doughty is presumed to know the rules of this jurisdiction. Therefore, the ODC argues that Doughty should have known that he was required to maintain a bona fide office for the practice of law in Delaware and that his failure to do so necessarily constitutes a knowing violation of a court rule under DLRPC Rule 3.4(c).

■■■ We disagree. Even if a lawyer is presumed to know all of the rules of the jurisdiction in which the lawyer practices, a presumption is "neither evidence nor a substitute for evidence."[17] A presumption is merely a rebuttable inference.[18] In the face of evidence to the contrary, a presumption of knowledge cannot satisfy the ODC's burden of proving, by clear and convincing evidence, the element of knowledge contained in DLRPC Rule 3.4(c).[19] "Knowing" misconduct under the DLRPC requires clear and convincing proof of "actual knowledge of the fact in question."[20]

■■■ In this case, Doughty testified that he had researched the requirements for practicing before Delaware courts when the Firm was formed in 1994. At the time, Doughty testified that he was unable to find any rule other than Supreme Court

---

**15.** *In re Reardon*, 759 A.2d 568, 575 (Del. 2000).

**16.** *In re Lassen*, 672 A.2d 988, 996 (Del.1996).

**17.** AM. JUR.2D § 181 (1994).

**18.** *See Hudak v. Procek*, 806 A.2d 140, 147 (Del.2002).

**19.** DEL. LAWYERS' R. DISCIPLINARY PROC. 15(c) (formal charges of misconduct shall be established by clear and convincing evidence).

**20.** DEL. LAWYERS' R. PROF. CONDUCT 1.0(f) (2003). Rule 1.0(f), which was adopted effective July 1, 2003 and was formerly contained in the Terminology section of the DLRPC, also provides that a "person's knowledge may be inferred from circumstances." *See, e.g., In re Bailey*, 821 A.2d 851, 863–64 (Del.2003).

Rule 12 that required the maintenance of an office in Delaware for signing pleadings. Doughty concluded that Supreme Court Rule 12 did not apply to him because his practice did not require him to appear in cases before the Supreme Court. Moreover, Doughty testified that, in 1994, Supreme Court Rule 12 did not define what constituted an office for the practice of law in Delaware. To the extent the rule applied to him, Doughty believed his reciprocal office arrangement satisfied the requirements of Rule 12.

The ODC does not appear to dispute Doughty's contention that his reciprocal office arrangement satisfied the office requirement of Rule 12, as it existed in 1994. Moreover, the ODC has acknowledged that when Rule 12(d) was amended, effective January 1, 1995 to include a definition of the term "office for the practice of law," Rule 12(a) also was amended. That amendment permitted active Delaware lawyers with non-Delaware law offices, like Doughty, to "sign papers to be filed in this Court provided the lawyer has a Delaware address, which may not be a post office box, at which parties may serve the lawyer with documents in a case proceeding in this Court."[21] Thus, until the April 1999 amendment to Rule 12, which deleted the provision allowing active Delaware lawyers

with non-Delaware law offices to file papers in the Supreme Court, the ODC appears to concede that Doughty was qualified to practice before this Court.

■ The ODC argues, however, that since April 1999, Rule 12 has required, without exception, active Delaware lawyers appearing before the Supreme Court to maintain bona fide, functioning law offices in this State.[22] Furthermore, the ODC asserts that the rules of the Superior Court and the Court of Common Pleas (courts before which Doughty has appeared regularly through the years) incorporate by reference the bona fide office requirement of Supreme Court Rule 12. Accordingly, the ODC argues that, since April 1999, Doughty, by failing to maintain a bona fide office in Delaware, has been practicing law in violation of these court rules.

Although the Board chose not to address the scope of the bona fide office requirement, we find clear and convincing evidence in the record to support a finding that from April 1999 until the time of the audit, Doughty had failed to maintain a bona fide office for the practice of law as required by the rules of the Delaware courts before which he appeared.[23] This conclusion, however, does not necessarily

**21.** DEL. SUPR. CT. R. 12(a)(i) (effective Jan. 1, 1995).

**22.** The purpose of the April 1999 amendment to Supreme Court Rule 12 was to ensure that Delaware lawyers appearing before this Court are accessible both to the Court and to the other lawyers and parties involved in cases before the Court. *Cf. Tolchin v. Supreme Court of New Jersey,* 111 F.3d 1099, 1109 (3d Cir.1997) (holding, in part, that New Jersey Supreme Court's bona fide office requirement bore a rational relationship to the Court's interest in ensuring attorney accessibility for client, courts, counsel and parties), *cert. denied,* 522 U.S. 977, 118 S.Ct. 435, 139 L.Ed.2d 334 (1997).

**23.** Because Doughty did not appear in cases before this Court, his failure to maintain a bona fide office in Delaware was not sanctionable conduct by this Court under Supreme Court Rule 12. Both Superior Court and Court of Common Pleas Civil Rule 90, however, incorporate the requirements of Rule 12 by reference. To the extent Doughty appeared in cases before the Superior Court and Court of Common Pleas, his failure to maintain a bona fide office clearly was a violation of the respective rules for practice in those courts.

mean that Doughty violated DLRPC Rule 3.4(c), which requires proof that Doughty knowingly disobeyed a court rule.

Given the testimony presented in this case, we agree with the Board that the evidence did not support a finding that Doughty knowingly violated a court rule. Although Doughty should have been aware of the changes to the rules governing his appearance before Delaware's courts, the record reflects that his failure to familiarize himself of the rule changes was the result of inadvertence and neglect. The evidence presented at the hearing does not support an inference that Doughty actually knew of the bona fide office requirement and knowingly practiced law in Delaware in violation of the requirement.[24] Accordingly, we adopt the Board's finding that Doughty did not violate DLRPC Rule 3.4(c).

## B.   False Certifications

■ The ODC's second objection to the Board's report and recommendation relates to the Board's conclusion that the false certifications in Doughty's Annual Registration Statements from 1996 to 2001 did not violate DLRPC Rules 8.4(c) and 8.4(d) because the false certifications were not intentional but were only negligent. The Board interpreted DLRPC Rules 8.4(c) and 8.4(d) to require misconduct more serious than "mere negligence." We review the Board's legal interpretation of DLRPC Rules 8.4(c) and 8.4(d) de novo.[25]

DLRPC Rule 8.4 provides, in part, as follows:

### Rule 8.4   Misconduct.

It is professional misconduct for a lawyer to:

. . .

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;[26]

The ODC alleged that Doughty's certifications to this Court failed to reflect, for over three years, that the Firm had unidentified client funds in its escrow account. Furthermore, Doughty's certifications failed to reflect for over six years that the Firm was not meeting its tax obligations. Doughty conceded that he had failed to meet the tax and record-keeping requirements of DLRPC Rule 1.15. He asserted, however, that he "had no direct responsibility" for the Firm's tax and record-keeping obligations and that he had no personal knowledge of the Firm's failures in these matters. Consequently, Doughty argued, his inaccurate certifications to this Court were not intentional and thus not in violation of DLRPC Rules 8.4(c) or 8.4(d).

The Board agreed that Doughty's misrepresentations to the Court were unintentional and that his negligent misrepresentations could not form the basis for a charge of misconduct under either DLRPC Rules 8.4(c) or 8.4(d). The Board concluded that there was no Delaware authority holding a respondent in violation of DLRPC Rules 8.4(c) or 8.4(d) for making a negligent misrepresentation to the Court.

---

24. *See In re Mekler*, 669 A.2d 655, 666–67 (Del.1995) (upholding a finding that respondent did not knowingly violate a court's scheduling order based on respondent's genuine but erroneous belief that he had been granted a continuance).

25. *In re Lassen*, 672 A.2d 988, 996 (Del.1996).

26. DEL. LAWYERS' R. PROF. CONDUCT 8.4 (2003). Although the Court adopted significant revisions to the DLRPC effective July 1, 2003, Rules 8.4(c) and 8.4(d) were unchanged.

■ We disagree. The Court's decision in *In re Benson*[27] held, among other things, that the lawyer's negligent misrepresentations to this Court with respect to her bookkeeping and tax obligations violated DLRPC Rule 8.4(d).[28] Moreover, as a question of first impression, we hold that a negligent misrepresentation also may form the basis for a charge of misconduct under the literal terms of DLRPC Rule 8.4(c).

■ In Doughty's case, we find clear and convincing evidence in the record that Doughty's negligent misrepresentations to the Court in his Annual Registration Statements violated both DLRPC Rule 8.4(c) and DLRPC Rule 8.4(d). As the only lawyer in the Firm who practiced law in Delaware, Doughty had a duty to ensure that the individuals charged with responsibility for the Firm's bookkeeping functions understood Delaware's unique record-keeping requirements. As the only Delaware lawyer, Doughty, at the very least, had a continuing obligation to inquire about the Firm's compliance with Delaware law and to satisfy himself that the Firm had reasonable safeguards in place to ensure compliance.

As the ODC points out, Doughty did not complete his Certificates of Compliance in reliance upon another lawyer in his Firm, nor would it have been reasonable for him to do so under the circumstances.[29] Thus, it was Doughty's sole responsibility to ensure that the certifications in his Annual Registration Statements were accurate. The record reflects that Doughty made little effort in this regard. His certifications were not made following any detailed inquiry but, rather, were made based upon his assumptions. As a partner in the Firm, Doughty certainly should have known that the Firm was having problems reconciling its escrow account. As the Firm's only Delaware lawyer, Doughty should have known that the Firm was not meeting its Delaware tax obligations. Under the circumstances, Doughty's certifications to this Court were negligent and violated both DLRPC Rules 8.4(c) and 8.4(d).

### Appropriate Sanction

■ The ODC's final argument is that the Board erred in recommending a private admonition. We review the Board's recommended sanction to ensure that it is appropriate, fair, and consistent with our prior disciplinary decisions.[30] While the Board's recommendation regarding a sanction is helpful to the Court, it is not binding.[31] The Court, in fact, has wide latitude in determining the appropriate form of discipline under the circumstances of a given case.[32]

■ In exercising our broad discretion, we are mindful that the objectives

27. 774 A.2d 258 (Del.2001).

28. The ODC and Benson had entered into a conditional admission in which Benson admitted violating DLRPC Rule 8.4(d), among other rules. The conditional admission did not include an admission to violating DLRPC Rule 8.4(c). The Court therefore was not presented with the issue of whether a negligent misrepresentation could support a finding of misconduct in violation of Rule 8.4(c).

29. Lawyers in a Delaware law firm are permitted to file their Certificates of Compliance in reliance upon the certification of the managing partner of the Delaware firm that the firm is in compliance. In Doughty's case, because the managing partner of the Firm was not a Delaware lawyer, Doughty could not have relied upon his managing partner's certification.

30. *See In re Reardon*, 759 A.2d 568, 580 (Del. 2000).

31. *In re Mekler*, 669 A.2d 655, 668 (Del.1995).

32. *In re Bailey*, 821 A.2d 851, 866 (Del.2003).

of any lawyer sanction should be to protect the public, to advance the administration of justice, to preserve confidence in the legal profession, and to deter other lawyers from similar misconduct.[33] To further these objectives and to promote consistency and predictability in the imposition of disciplinary sanctions, the Court looks to the ABA Standards for Imposing Lawyer Sanctions as a model for determining the appropriate discipline warranted under the circumstances of each case.[34] The ABA framework consists of four key factors to be considered by the Court: (a) the ethical duty violated; (b) the lawyer's mental state; (c) the extent of the actual or potential injury caused by the lawyer's misconduct; and (d) aggravating and mitigating factors.[35]

Doughty's negligent misconduct in this case violated his duties to his clients, to the legal system, and to the profession. Although no actual injury resulted, we disagree with the Board's conclusion that the potential for harm was minimal. As this Court previously has stated, "A lawyer's duty to maintain proper books and records exist for the purpose of protecting not only the lawyer but the lawyer's clients, and the failure to fulfill that duty presents serious risks to the lawyer's clients, even if no actual harm results."[36] Under ABA Standard 7.3, a reprimand "is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system."[37]

Having concluded that a reprimand appears to be warranted, the Court now must consider any aggravating or mitigating factors that might compel us to impose a greater or lesser sanction.[38] The Board found that Doughty's substantial experience as a lawyer and his commission of multiple offenses were both aggravating factors in this case. In mitigation, the Board considered Doughty's lack of a prior disciplinary record, his absence of dishonest motive, his timely, good faith remedial efforts, and his cooperation with the disciplinary authorities.

We accept the Board's findings regarding aggravating and mitigating factors. We recognize that the mitigating factors are substantial, and we appreciate the significant resources that Doughty and the Firm have expended in attempting to rectify the problems. Nonetheless, we are not persuaded that any lesser sanction than a reprimand is justified under the circumstances.

As we have stated previously, a public sanction affords the Court the opportunity to underscore how serious the Court considers a lawyer's obligation to maintain orderly books and records.[39] The failure to fulfill this obligation presents serious risks of harm to a lawyer's clients. A public sanction also serves as an important preventive measure in cases such as this in which the violations could be readily repeated without prompt detection. A public sanction puts clients on notice of past problems and allows them to take any steps deemed necessary to protect their

33. *In re Figliola,* 652 A.2d 1071, 1076 (Del. 1995).

34. *In re Reardon,* 759 A.2d at 575–76.

35. *In re Lassen,* Del.Supr., 672 A.2d 988, 998 (1996).

36. *In re Benson,* 774 A.2d at 262–63.

37. ABA STANDARDS FOR IMPOSING LAWYER SANCTIONS Standard 7.3 (1991 as amended February 1992).

38. *In re Reardon,* 759 A.2d at 577–78.

39. *In re Benson,* 774 A.2d at 262.

own interests. Furthermore, a public reprimand in this case is more consistent with our prior precedent involving similar misconduct.[40]

### Conclusion

For the foregoing reasons, Doughty is publicly reprimanded for his violations of DLRPC Rules 1.15(b), 1.15(d), 8.4(c), and 8.4(d). Doughty shall be subject to a two-year period of probation, subject to the following terms:

(1) The period of probation shall begin October 1, 2003 and end September 30, 2005, assuming the ODC certifies to this Court the satisfactory completion of the terms of probation.

(2) Probation shall be under the supervision of a monitor to be appointed by the ODC.

(3) During the first year of the probationary period, Doughty shall file with the ODC quarterly reports regarding whether he is in compliance with the record-keeping and tax filing rules. In the second year, these reports shall be filed semiannually.

(4) At the end of the first year of probation, Doughty shall submit to an audit, at his expense, performed by an auditor acceptable to the ODC to verify Doughty's compliance with his record-keeping and tax obligations.

(5) To the extent he has not yet done so, Doughty shall confirm with the ODC that: (a) the original escrow account with the $2000 discrepancy has been closed; (b) all imprest funds have been disbursed and have cleared; (c) the Firm has deposited its own funds to cover any remaining

shortfall; and (d) the account has zero-balanced.

---

40. *See, e.g., In re Benson,* 774 A.2d 258 (Del. 2001); *In re Macpherson–Johnson,* 2001 WL 760866 (Del. June 14, 2001).