IN THE SUPREME COURT OF THE STATE OF DELAWARE

IN THE MATTER OF A MEMBER &sect;
OF THE BAR OF THE SUPREME &sect;　　No. 260, 2017
COURT OF THE STATE OF &sect;
DELAWARE: &sect;
&sect;
JOHN S. MALIK &sect;

Submitted: June 30, 2017
Decided: July 7, 2017

Before **VALIHURA, VAUGHN,** and **SEITZ,** Justices.

### ORDER

This 7th day of July 2017, it appears to the Court that:

(1)　　This is a lawyer disciplinary proceeding. On June 26, 2017, the Board on Professional Responsibility filed a report with this Court recommending that the respondent, John S. Malik, Esquire, be publicly reprimanded and placed on a period of probation for two years, with the imposition of specific conditions. A copy of the Board's report is attached to this order. Neither the Office of Disciplinary Counsel nor Malik has filed any objections to the Board's report.

(2)　　The Court has considered the matter carefully. We find the Board's recommendation of a public reprimand with a two-year period of probation with conditions to be appropriate. Thus, we accept the Board's

findings and recommendation for discipline and incorporate the Board's findings and recommendation by reference.

NOW, THEREFORE, IT IS ORDERED that the Board's June 26, 2017 report is hereby ACCEPTED. The Office of Disciplinary Counsel shall disseminate this Order in accordance with Rule 14 of the Delaware Lawyers' Rules of Disciplinary Procedure.

BY THE COURT:

Justice

-2-

EFiled: Jun 26 2017 12:45PM EDT
Filing ID 60775482
Case Number 260,2017

## BOARD ON PROFESSIONAL RESPONSIBILITY
## OF THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| In the Matter of a | * | |
| Member of the Bar of the | * | *CONFIDENTIAL* |
| Supreme Court of Delaware: | * | |
| | * | **Board Case No. 113101-B** |
| JOHN S. MALIK, | * | |
| | * | |
| Respondent. | * | |

### REPORT OF THE BOARD ON THE PETITION FOR DISCIPLINE

I. *Procedural Background*

Pending before a panel of the Board on Professional Responsibility ("the Board") is a Petition for Discipline filed by the Office of Disciplinary Counsel ("the ODC") on or about February 1, 2017 in Board Case No. 113101-B ("the Petition") against John S. Malik, Esquire ("the Respondent"), a member of the Bar of the Supreme Court of the State of Delaware. The Petition alleged violations of Rules 1.5(f), 1.15(a), 1.15(d), 5.3, 8.4(c), and 8.4(d). Respondent, through his counsel, Charles Slanina, Esquire, filed an Answer to the Petition ("the Answer").

The Board convened a hearing ("the Hearing") by the panel on April 13, 2017.[1] The members of the panel of the Board were Dennis Klima, Karen V. Sullivan, Esquire, and Seth L. Thompson, Esquire, Chair ("the Panel"). Kathleen Vavala, Esquire represented the ODC. Charles Slanina, Esquire represented the Respondent.

At the outset of the Hearing, the Respondent moved to file an Amended Answer, with the amendments reflected by underline on pages 10 and 11. (Tr. at p. 5.) The ODC had no objection. (Tr. at p. 5.) The motion was granted, and the Panel received copies of the Amended Answer. The amendments resulted in the Respondent admitting all six counts of the Petition.

---

[1] The transcript of the April 13, 2017 hearing is cited herein as "Tr. at p. ___."

At the Hearing, the Panel received into evidence two joint exhibits binders. The Respondent also submitted a letter dated April 10, 2017 from Dana L. Reynolds, Esquire. The Panel also received: a case law binder[2]; Summaries of Representative Delaware Precedents re: Books and Records Deficiencies, Delinquent Lawyer Tax Obligations, and False Certificates of Compliance; and the Respondent's counsel's highlighted copy of ABA Standard 9.32 on mitigating factors. The Panel heard testimony from the Respondent, Alexander Funk, Esquire, Allen Dale Bowers, Esquire, and William Deely, Esquire.

II. *Factual Findings*

Because the Respondent's Amended Answer had admitted the violations alleged in the Petition, the ODC, the Respondent, and the Panel treated the hearing as relating primarily to sanctions. (Tr. at pp. 5-6.) Nevertheless, the Panel received testimony from the Respondent and the exhibits relating to factual circumstances surrounding the violations. The first joint exhibits binder consisted of: 1) a Quick Report regarding Joshua Chattin dated October 5, 2016; 2) an invoice regarding Joshua Chattin dated September 30, 2016; 3) a Fee Agreement for Mark Villei dated August 15, 2015; 4) a Quick Report regarding Mark Villei dated October 5, 2016; 5) an invoice regarding Mark Villei dated August 6, 2015; 6) a Fee Agreement for John Vanderhoogt dated April 22, 2015; 7) a Quick Report regarding John Vanderhoogt dated October 5, 2016; 8) an invoice regarding John Vanderhoogt dated April 16, 2015; 9) an Independent Accountant's Report from Master Sidlow Associates dated July 27, 2016; and 10) the Respondent's 2016 Delaware Supreme Court Certificate of Compliance.

---

[2] The case law binder included the following: *In re Benson*, 774 A.2d 258 (Del. 2001); *In re Castro*, Del,, No. 5, 2017 Strine, C.J. (Apr. 12, 2017) (Order); *In re Doughty*, 832 A.2d 724 (Del. 2003); *In re Finestrauss*, 32 A.3d 978 (Del. 2011); *In re Froelich*, 838 A.2d 1117 (Del. 2003); *In re Gray*, 152 A.3d 581 (Del. 2016); *In re Macpherson-Johnson*, 782 A.2d 265 (Del. 2001); *In re Martin*, 35 A.3d 419 (Del. 2011); *In re Otlowski*, 976 A.2d 172, 2009 WL 1796083 (Del. 2009); and *In re Stull*, 985 A.2d 391, 2009 WL 4573243 (Del. 2009).

2

The second joint exhibits binder consisted of the Respondent's five prior private admonitions: ODC File No. 105379-B, dated August 7, 2013; Board Case No. 32, 2005; Board Case No. 67, 1994; Board Case No. 53, 1993; and Board Case No. 17, 1990.

Based on the factual allegations of the Petition admitted by the Respondent and the credible, uncontroverted testimony received at the hearing from the Respondent, and the submitted exhibits, the Board makes the factual findings which follow.

1. The Respondent is a member of the Bar of the Supreme Court of Delaware. He was admitted to the Bar in 1984. (Petition and Amended Answer ¶ 1; Tr. at p. 13.) At all times relevant to the Petition, the Respondent was engaged in the private practice of law in Wilmington, Delaware. (Tr. at pp. 13-14.) The Respondent has been a solo practitioner for 31.5 years. (Tr. at p. 14.) From 1984 through the day of the firm's last audit, the Respondent was in charge of the firm's books and records. (Petition and Amended Answer ¶ 1.)

2. A compliance audit of the Respondent's financial books and records was conducted of the Respondent's law offices for the six months ending April 30, 2016 (the "2016 Master Sidlow Audit Report") by the auditor for the Lawyer's Fund for Client Protection ("LFCP"). (Petition ¶ 23.)

3. The 2016 Master Sidlow Audit Report reflected that the Respondent failed to pay properly his tax obligations to the City of Wilmington. Respondentfailed to file a tax return or pay his 2013 and 2014 City of Wilmington net profits tax until March 15, 2016. (Petition and Amended Answer ¶ 24.)

4. The 2016 Master Sidlow Audit Report also included the following findings relating to the Respondent's books and records and Fiduciary Account #24074641:

3

(a) The reconciled end-of-the-month cash balances differed from the total of all client funds held in all six of the months reviewed, with differences ranging from -$3,031.79 to $3,963.31;

(b) In one transaction, attorney's fees were withdrawn from the trust account prior to the deposit of client funds, resulting in a negative balance of -$1,000;

(c) There were 21 client balances that were over six months old for which the attorney will not be providing additional services, with balances ranging from $18 to $1,250;

(d) In one transaction, the firm did not have documentation in the client's file that supported the disbursement of funds;

(e) The firm could not provide a retainer agreement for one of the five transactions selected for testing; and

(f) The firm did not provide a statement to the client showing the amount withdrawn and the remaining balance of the unearned retainer for any of the five transactions selected for testing.

(Petition and Amended Answer ¶ 25.)

5. The Respondent required Mr. Chattin to pay an advance fee but failed to provide him with a written statement that the fee is refundable if not earned and the basis upon which the fees shall be considered earned. (Petition and Amended Answer ¶ 21.)

6. The Respondent failed to provide Mssrs. Chattin, Villei, and Vanderhoogt with statements of the fees earned at the time the funds were withdrawn from the trust account. (Petition and Amended Answer ¶¶ 21-22.)

4

7. The Respondent failed to have reasonable safeguards in place to ensure accurate accounting of his law practice books and records and failed to supervise his employee's conduct in reconciling the books and records and timely paying taxes.

8. The Respondent filed his 2016 Delaware Supreme Court Certificate of Compliance, and for Items 2.9, and 2.11, the Respondent answered "Yes" but should have answered "No." (Petition and Amended Answer ¶ 33.)

III. *Standard of Proof*

Allegations of professional misconduct must be established by the ODC by clear and convincing evidence.[3]

IV. *Findings on Violations of the Rules*

Based on the Respondent's admissions and the evidence provided at the Hearing, the Panel finds that the ODC has met its burden. Specifically, the Petition alleges, and the Amended Answer admits, six violations of six separate rules of the Delaware Lawyers' Rules of Professional Conduct as follows:

**COUNT ONE: RESPONDENT FAILED TO PROVIDE CLIENT WITH A FEE AGREEMENT AND/OR A STATEMENT OF EARNED FEES AT THE TIME FEES WERE WITHDRAWN FROM THE TRUST ACCOUNT IN VIOLATION OF RULE 1.5(f)**

Rule 1.5(f) states an attorney may "require the client to pay some or all of the fee in advance of... the representation, provided... the lawyer shall provide the client with a written statement that the fee is refundable if it is not earned..." and "all unearned fees shall be retained in the lawyer's trust account, with statement of the fees earned provided to the client at the time such funds are withdrawn from the trust account." By failing to provide Mr. Chattin with a written statement that the fee is refundable if not earned, as well as the basis upon which the fees would be considered earned, the Respondent violated Rule 1.5(f). (Petition and Amended

---

[3] Delaware Lawyers' Rule of Disciplinary Procedure 15(c).

Answer ¶ 21.) The Respondent also violated Rule 1.5(f) by failing to provide Mssrs. Chattin, Villei, and Vanderhoogt with statements of the fees earned at the time the funds were withdrawn from the trust account. (Petition and Amended Answer ¶¶ 21-22.)

## COUNT TWO: RESPONDENT FAILED TO IDENTIFY AND SAFEGUARD CLIENT FUNDS IN VIOLATION OF RULE 1.15(a)

Rule 1.15(a) requires that a lawyer holding the property of clients or third persons shall identify and appropriately safeguard such property. By failing to safeguard client funds, which resulted in negative client balances in the Fiduciary Account, the Respondent violated Rule 1.15(a). (Petition and Amended Answer ¶ 27.)

## COUNT THREE: RESPONDENT FAILED TO MAINTAIN BOOKS AND RECORDS IN VIOLATION OF RULE 1.15(d)

Rule 1.15(d) sets forth detailed and specific requirements for the maintenance of attorneys' books and records and handling of practice-related funds. The Respondent failed to properly maintain his books and records in violation of Rule 1.15(d) by: (1) failing to reconcile the end-of-the-month cash balances with the total of client funds for each of the six months reviewed; (2) withdrawing fees from the trust account prior to the deposit of client funds, resulting in a negative balance; (3) having 21 client balances that were over six months old for which the attorney will not be providing additional services in the trust account; and (4) failing to maintain retainer agreements, compensation agreements, or both, and failing to maintain copies of accountings to clients or third persons showing the disbursement of funds to them or on their behalf. (Petition and Amended Answer ¶¶ 25, 29.)

## COUNT FOUR: RESPONDENT FAILED TO SUPERVISE NONLAWYER ASSISTANTS IN VIOLATION OF RULE 5.3

Rule 5.3 provides that, in employing nonlawyer assistants, "a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the

6

person's conduct is compatible with the professional obligations of the lawyer... and... a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if... the lawyer... has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action." The Respondent violated Rule 5.3 by failing to have reasonable safeguards in place which would ensure an accurate accounting of his law practice books and records in compliance with the Rules, by failing to supervise his employee's conduct in reconciling the books and records and paying taxes, by knowing that taxes were not being timely filed and paid, or any combination thereof. (Petition and Amended Answer ¶ 31.)

## COUNT FIVE: RESPONDENT ENGAGED IN CONDUCT INVOLVING MISREPRESENTATION IN VIOLATION OF RULE 8.4(c)

Rule 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." By filing with the Delaware Supreme Court in 2016 a Certificate of Compliance which included misrepresentations relating to the Respondent's maintenance of his law practice books and records, the Respondent violated Rule 8.4(c). (Petition and Amended Answer ¶ 35.)

## COUNT SIX: RESPONDENT ENGAGED IN CONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE IN VIOLATION OF RULE 8.4(d)

Rule 8.4(d) provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." The Delaware Supreme Court relies upon the representations made by attorneys in the Certificate of Compliance filed each year in the administration of justice governing the practice of law in Delaware. By filing his 2016 Certificates of Compliance, which included misrepresentations relating to the Respondent's

7

maintenance of his law practice books and records and the payment of taxes, the Respondent violated Rule 8.4(d). (Petition and Amended Answer ¶ 37.)

## V. *Recommended Sanction*

At the Hearing, the ODC contended that the appropriate sanction in this matter is a public reprimand with a two-year probation with certain conditions. (Tr. at p. 105.) The Respondent, through his counsel, conceded that the presumptive sanction is a public reprimand, but contended that the appropriate end result is a private admonition with conditions that include probation, during which the Respondent would provide compliance pre-certification. (Tr. at pp. 126, 139-140.) For the reasons which follow, the Panel recommends that the Respondent be subject to a public reprimand and a two-year probation during which the Respondent must provide: 1) a pre-certification by a licensed certified public accountant who has attended the LFCP training with his Certificates of Compliance filed in 2017 and 2018, sending a copy of each pre-certification to the ODC; and 2) notification to the ODC within 15 days of filing the return and paying his City of Wilmington Net Profits taxes for tax years 2016 and 2017.

## VI. *Rationale for Recommended Sanction*

In making its recommendation, the Panel has utilized the four-part framework set forth in the ABA Standards for Imposing Lawyer Sanctions ("ABA Standards"). To promote consistency and predictability in the imposition of disciplinary sanctions, the Delaware Supreme Court looks to the ABA Standards. *In re Doughty*, 832 A.2d 724, 735-736 (Del. 2003) (citations omitted). The ABA Standards' framework considers: (1) the ethical duty violated; (2) the lawyer's state of mind; (3) the actual or potential injury caused by the lawyer's misconduct; and (4) aggravating and mitigating factors. *Id.*

8

## 1. *The Ethical Duties Violated.*

As previously recited, the ODC alleged, the Respondent admitted, and the Panel determined that the Respondent committed misconduct in violation of Professional Rules of Conduct 1.5(f) (failing to provide the client with a fee agreement and/or written statement of earned fees at the time fees were withdrawn); 1.15(a) (failing to safeguard client funds); 1.15(d) (failing to properly maintain financial books and records); 5.3 (failing to supervise a nonlawyer assistant); 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation); and 8.4(d) (engaging in conduct that is prejudicial to the administration of justice governing the practice of law in Delaware). Under the ABA Standards, this misconduct constituted violations of duties owed by the Respondent to clients (Rules 1.5 and 1.15(a)), violations of duties owed by Respondent to the legal system (Rules 8.4(c) and (d)), and violations of duties owed by Respondent as a professional (Rules 1.15(d) and 5.3). *See* ABA Standards 4.0, 6.0, and 7.0.

## 2. *State of Mind.*

The ODC contends, the Respondent agrees, and the Panel finds that the Respondent's mental state was negligence. (Tr. at pp. 109, 111, 132.) "Negligence" is defined in the ABA Standards as "the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." The Respondent acknowledged his responsibility to maintain the books and records and testified that he was probably deficient in leaving maintenance obligations to a bookkeeper who did not have as much experience and appreciation of accounting principles as his prior bookkeeper. (Tr. at pp. 18-19.) The Panel accepts the Respondent's unrefuted testimony that he personally performed the reconciliations regularly, albeit not always within a monthly cycle, and that his software was unable to print previous reconciliation reports.

9

(Tr. at pp. 21-23.)    The Respondent also testified to being confused about clients, resulting in the $1,000 discrepancy. (Tr. at pp. 24, 40.) Additionally, he admitted that he did not pay enough attention to whether notices were being sent to clients when funds were withdrawn, and he should have reviewed the file missing a fee agreement and noticed its absence. (Tr. at p. 24.) With regard to the delinquent City of Wilmington Net Profits taxes, the Respondent testified that, unlike other taxes, there was no automated program that would separate the funds subject to that tax and so it was a cumbersome process that should have been delegated to someone else, allowing the Respondent to focus on the practice of law. (Tr. at pp. 49-51.)

In light of the above, the Panel finds that the Respondent was negligent. *See, e.g., In the Matter of Gray*, 152 A.3d 581, 2016 WL 7188110 (Del. 2016) (approving Board determination of acting negligently in having deficiencies in accounts, filing inaccurate certificate of compliance, and failing to pay payroll taxes).

3. *Actual or Potential Injury.*

There was no testimony or evidence presented that the misconduct actually harmed any of the Respondent's clients. However, actual injury is not required. *See, e.g., In re Benson*, 77 A.2d 258, 262 (Del. 2001).

With respect to potential injury, the Respondent's contention is that the record lacks evidence to support even the potential for harm because the Respondent was performing the reconciliations and was simply unable to reproduce the timely reports later. (Tr. at 133.) However, the Panel considers that too narrow a view of the record, focusing only on the accounting issues while ignoring taxes paid nearly two years late, a fee agreement not provided to a client, and a Certificate of Compliance filed with misrepresentations. "Potential injury" is defined in the ABA Standards as "the harm to a client, the public, the legal system or the

10

profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct." The record reflects that potential for injury to a client existed, in that the client who did not receive a fee agreement might not have understood that the unearned portion of the fee was refundable. Additionally, with respect to the legal system, potential injury existed, as the Court likely would have relied on the Certificate of Compliance, but for the compliance audit. *See In re Benson*, 774 A.2d 258, 262-263 (Del. 2001) (stating the Delaware Supreme Court's "means of monitoring a lawyer's compliance with record keeping obligations is dependent upon the lawyer's accurate, written representations as part of the annual registration process"). Finally, the Respondent's contention regarding the record-keeping runs counter to Delaware precedent. *See In re Doughty*, 832 A.2d 724 (Del. 2003) (applying ABA Standard 7.3 and disagreeing with the board's conclusion that potential for harm was minimal when attorney failed to maintain proper books and records and pay taxes when his firm's main office handled record-keeping duties and many of its major clients performed their own audits).

4. *Presumptive Sanction.*

The ODC contends, the Respondent agrees, and the Panel finds that the Respondent's mental state was negligence. (Tr. at pp. 111, 112, 113-114, 126.) Where, as in this matter, the conduct involves negligent acts with injury or potential injury, these provisions point generally to a public reprimand as an appropriate sanction. *See* ABA Standards 4.13, 4.63, 6.13 and 7.3. The presumptive sanction must then factor in the presence or absence of any mitigating or aggravating factors.

5. *Aggravating and Mitigating Factors.*

ABA Standard 9.22 sets forth the following non-exhaustive list of aggravating factors:

11

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;

(c) a pattern of misconduct;

(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of victim;

(i) substantial experience in the practice of law;

(j) indifference to making restitution;

(k) illegal conduct, including that involving the use of controlled substances.

(ABA Standard § 9.22)

The ODC contended the applicability of (a), (c), (d), and (i). (Tr. at pp. 114-115.) The Panel agrees that the aggravating factors are: (a), based on the Respondent's five private admonitions for prior disciplinary offenses[4]; (c), based on the pattern of misconduct involving three different clients and multiple years of untimely taxes; (d), based on the multiple offenses involving five different Rules; and (i), based on his law practice exceeding thirty years.

---

[4] The ODC and the Respondent's counsel reached differing conclusions on whether the present violations fell within the scope of "practice management" along with the Respondent's prior disciplinary record fell. (Tr. at pp. 104, 124-125, 138.) The Delaware Supreme Court has found misconduct made during probation for similar acts "significant and disturbing." *In re Spiller*, 788 A.2d 114, 118 (Del. 2001). The Court has also approved a Board recommendation for a public reprimand in light of an attorney's prior disciplinary proceeding relating to delinquent tax payments. *In the Matter of Finestrauss*, 32 A.3d 978, 979 (Del. 2011). Here, the Respondent's prior discipline involved different Rules and dissimilar acts. While that may reduce the significance and avoid "disturbing," there must still be weight given to a disciplinary record involving five admonitions.

ABA Standard 9.32 sets forth the following non-exhaustive list of factors to be considered in mitigation:

(a) absence of a prior disciplinary record;

(b) absence of a dishonest or selfish motive;

(c) personal or emotional problems;

(d) timely good faith effort to make restitution or to rectify consequences of misconduct;

(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;

(f) inexperience in the practice of law;

(g) character or reputation;

(h) physical disability;

(i) mental disability or chemical dependency including alcoholism or drug abuse when:

(1) there is medical evidence that the Respondent is affected by a chemical dependency or mental disability;

(2) the chemical dependency or mental disability caused the misconduct;

(3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely;

(j) delay in disciplinary proceedings;

(k) imposition of other penalties or sanctions;

(l) remorse;

(m) remoteness of prior offenses.

(ABA Standard § 9.32)

At the Hearing, the Respondent's counsel asserted to the Panel that factors (b), (d), (e), (g), (l), and (m) should be considered. (Tr. at pp. 136-138.) The ODC acknowledged the existence of all of the aforementioned factors, except for remoteness of prior offenses. (Tr. at pp. 141-142.)

With respect to factor (m), the most recent admonition occurred in 2013, less than a year before the Respondent failed to timely file and pay his 2013 City of Wilmington Net Profits tax. That admonition cannot be deemed remote in time.[5] The admonitions in 1990, 1993, and 1994 are certainly remote in time. The admonition issued in January 2006, over a decade ago, is less so, but still remote in time. *See In re Thompson*, 911 A.2d 373, 376 n. 9 (Del. 2006) (finding, in the context of prior disciplinary record, an admonition from nine years earlier to be remote in time and only worthy of "some limited weight").

Regardless, the evidence plainly reflects a number of mitigating factors, specifically: (b) an absence of a dishonest or selfish motive; (d) timely good faith effort to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to the ODC and a very cooperative attitude toward these proceedings; (g) excellent character or reputation; and (l) sincere remorse.

The Panel finds that the overall balance between the aforementioned aggravating and mitigating factors does not warrant a reduction of the presumptive sanction of public reprimand.

6. *Precedent.*

Lastly, the Panel believes that recommending a public reprimand in this matter is consistent with Delaware Supreme Court precedent. "[T]he objectives of any lawyer sanction should be to protect the public, to advance the administration of justice, to preserve confidence in

---

[5] For discussion of remoteness in nature of offense, see n. 4.

14

the legal profession, and to deter other lawyers from similar misconduct." *In re Doughty*, 832 A.2d 724, 735-736 (Del. 2003) (citations omitted).

With regard to an appropriate sanction, counsel for the Respondent directed the Panel's attention to *In re Woods*, --- A.3d ----, 2016 WL 3886148 (Del. 2016), and *In re Martin*, 35 A.3d 419, 2011 WL 2473325 (Del. 2011), which both involved attorneys who agreed to a private admonition and probation with conditions. (Tr. at p. 127.) The private admonitions became public when the attorney in each matter then violated a condition of the probation, specifically the need to provide a pre-certification for a Certificate of Compliance. While the these two cases involve violations of Rules 1.15 and 8.4 and, in the case of *In re Martin*, Rule 5.3, unlike the present matter, neither *In re Woods* nor *In re Martin* reflects the additional violation of Rule 1.5.

The Respondent's counsel also points to the Summaries of Representative Delaware Precedents re: Books and Records Deficiencies, Delinquent Lawyer Tax Obligations, and False Certificates of Compliance ("the Summaries"), beginning on page 46, following an acknowledged number of cases with public reprimands. The Summaries identify five matters with Court-imposed private admonition and probation, two from 2002 and one each from 1999, 1996, and 1989. The most recent matters, which are from over fourteen years ago, only involved violations of Rules 1.15, 5.3 (in Del. Supr. No. 261, 2002 only), and 8.4(d). The matter *sub judice* includes an additional violation of Rules 1.5.

More importantly, much more recent Delaware Supreme Court precedent calls for a public reprimand. From 2016, the Board, in *In re Gray*, 2016 WL 7188110 (Del. 2016), noted the primary basis for declining to recommend a private admonition as the violations including failure to file and pay taxes, in addition to the books and records violations. The same is true of

15

the matter at hand. There is also the additional violation of Rule 1.5 due to the lack of a fee agreement and written statements at the time of fee withdrawal.

On the day before the Hearing, the Delaware Supreme Court issued its decision in *In re Castro*, 2017 WL 1376411 (Del. Apr. 12, 2017). The Respondent's counsel attempts to distinguish that precedent from the present matter based on this matter's purported lack of findings regarding absent fee agreements, negative client balances, commingling, and, most importantly, the record-keeping issues spanning multiple reporting periods. (Tr. at pp. 129-132.) However, the case at bar does involve an absent fee agreement, a negative client balance, and record-keeping issues spanning multiple periods, specifically, two tax years. Unlike *In re Castro*, the Respondent has also been found to have violated Rule 5.3. Additionally, while *In re Castro* and this matter have comparable mitigating factors, there was only one "lukewarm" aggravating factor in *In re Castro*, compared with several aggravating factors here, including a prior disciplinary record of five admonitions.

VII. *Conclusion.*

Based on the foregoing considerations, the Panel recommends as action of the Board that the sanctions set forth in Section V of this Report be imposed upon the Respondent, including the imposition of costs of these disciplinary proceedings, including the LFCP audit in 2016, pursuant to Delaware Lawyers' Rule of Disciplinary Procedure 27.

Respectfully submitted,

Seth L. Thompson, Esquire, Chair
Date: 6/26/17

16

Karen V. Sullivan, Esquire
Date: 6/26/17

Dennis Klima
Date: 6/26/17

17