In the Matter of a Member of the Bar of the Supreme Court of Delaware JOHN M. STULL Respondent.
No. 657, 2009, Board Case No. 2009-0061-B.
Supreme Court of Delaware.
Submitted: November 30, 2009.
Decided: December 4, 2009.
Before STEELE, Chief Justice, JACOBS and RIDGELY, Justices.

ORDER
HENRY duPONT RIDGELY, Justice.
This 4th day of December 2009, it appears to the Court that the Board on Professional Responsibility has filed its Report and Recommendation of Sanctions in this matter pursuant to Rule 9(d) of the Delaware Lawyers' Rules of Disciplinary Procedure. Neither the Respondent nor the Office of Disciplinary Counsel has filed objections to the Board's Report. The Court has reviewed the matter pursuant to Rule 9(e) and concludes that the Board's Report should be approved.
NOW, THEREFORE, IT IS ORDERED that:
1) The Report of the Board on Professional Responsibility filed on November 10, 2009 (copy attached) is hereby APPROVED.
2) Respondent is publicly reprimanded for his violations of Rules 1.15(a), 1.15(d), 8.4(c) and Rule 8.4(d).
3) Respondent shall serve a public two-year period of probation from the date of this Order, subject to the following terms:
(a) Respondent shall have completed an audit by a licensed certified public accountant for his Certificates of Compliance, reporting the status of his compliance or lack thereof with the requirements of Rule 1.15 and Rule 1.15A, and shall file each annual Certificate of Compliance by no later than the due date;
(b) Respondent shall also provide the ODC with a timely written confirmation that he has filed each annual Certificate of Compliance with the required precertification.
(c) Respondent shall cooperate fully and promptly with the ODC in its efforts to monitor compliance with his probation, including any audit performed at the request of the ODC or otherwise;
(d) Respondent shall also cooperate with the ODC's investigation of any allegations of unprofessional conduct that may come to the attention of the ODC;
(e) Upon request of the ODC, the Respondent shall provide authorization for release of information and documentation to verify compliance with these conditions;
(f) the Respondent shall pay the costs of this disciplinary proceeding pursuant to Procedural Rule 27 promptly upon being presented with a statement of these costs by the ODC. The costs to be paid by the Respondent will include without limitation the cost of the Lawyers' Fund follow-up audits; and
(g) Respondent shall meet with the Professional Guidance Committee for assistance and guidance in managing his solo practice of law and he shall complete six hours of MCLE programming addressing books and records, law office management, and related issues no later than the due date for filing his next Certificate of Compliance.
IN THE MATTER OF A ) CONFIDENTIAL
MEMBER OF THE BAR OF )
THE SUPREME COURT OF )
DELAWARE: ) Board Case No. 2009-0061-B
 )
JOHN M. STULL )
RESPONDENT. )

THE BOARD ON PROFESSIONAL RESPONSIBILITY'S REPORT AND RECOMMENDATION OF SANCTIONS
This is the report and recommendation of sanctions of the Board on Professional Responsibility of the Supreme Court of the State of Delaware (the "Board") in the-above-captioned matter. A hearing on this matter was held on September 9, 2009, in the Supreme Court Hearing Room, 11th Floor, Carvel State Building, 820 North French Street, Wilmington, Delaware. The Panel of the Board consisted of Wayne J. Carey, Esquire, Yvonne Anders Gordon, Ed. D., and Kevin F. Brady, Esquire (Chair) (collectively the "Panel"). The Office of Disciplinary Counsel ("ODC") was represented by Michael S. McGinniss, Esquire. Respondent, John M. Stull ("Respondent"), was represented by Charles Slanina, Esquire of Finger, Slanina & Liebesman.

I. PROCEDURAL HISTORY
ODC filed a four-count Petition for Discipline on July 2, 2009, in Board Case No. 2009-0061-B (the "Petition"). As set forth in more detail below, ODC asserted in the Petition that Respondent, a member of the Bar of the Supreme Court of the State of Delaware since 1967, engaged in professional misconduct in violation of Rule 1.15(a), 1.15(d), 8.4(c) and 8.4(d) of the Delaware Lawyers' Rules of Professional Conduct ("Rules"). (Petition at 1). The Respondent filed an Answer to the Petition (the "Answer") on July 22, 2009, essentially admitting the allegations of the Petition. The record in this case consists of: (i) the Petition; (ii) the Answer; and (iii) the transcript of the September 9, 2009 hearing (and exhibits admitted therein) which includes the testimony of Edward D. Devenny and the Respondent, who testified on his own behalf,[1] as well as post-hearing submissions from Mr. McGinnis and Mr. Slanina in the form of legal authority regarding sanctions.

II. FACTUAL FINDINGS AND ADMITTED VIOLATIONS
1. The Respondent is a member of the Bar of the Supreme Court of the State of Delaware. He was admitted to the Bar in 1967. (Answer at 1).
2. For many years, Respondent was in-house counsel in the Labor Law group at DuPont until his retirement in 1990. (Tr. at 35-36). After his retirement from DuPont, Respondent entered into the private practice of law in Delaware as a solo practitioner with a small practice in the field of ERISA law. (Tr. at 37-38). Respondent worked approximately 25 hours per week servicing an average of five to six clients and generating on average about $2,000 per month in fees. (Tr. at 16, 39). Respondent had no employees; he was solely responsible for the management of his law office, including maintaining the law practice bank accounts. (Answer at 1; Tr. at 37, 51).
3. On April 22, 2008, Edward D. Devenny, a certified public accountant (`"CPA") with Master Sidlow & Associates, the auditor for the Lawyers' Fund for Client Protection ("LFCP"), performed a compliance audit of Respondent's records which included a review of the Respondent's law practice books and records as well as the relevant bank accounts. (Answer at 1; Tr. at 8). The LFCP report for this audit identified the Respondent's non-compliance with Rule 1.15 for the six-month period ending March 31, 2008. (Id.) In particular, the LFCP noted in its report that the Respondent did not have an office manager, accountant, or computerized records system. (Tr. at 8). LFCP provided Respondent with a copy of the audit report and directed him to submit an affidavit from a licensed CPA by November 1. 2008, confirming that he was in full compliance with Rule 1.15 with respect to the maintenance of his law practice books and records and bank accounts for the preceding quarter, and that the errors identified in the audit report had been corrected. (Exhibit 1). Respondent, however, failed to submit the requested affidavit. (Answer at 2).
4. On December 12, 2008, the LFCP again wrote to the Respondent directing him to provide the required affidavit by December 31, 2008, or the LFCP would send its auditor back to do another audit of Respondent's books and also refer the matter to the ODC. (Answer at 2). While Respondent failed to meet the December 31, 2008 deadline, he did leave a phone message for the LFCP indicating that the Respondent would not be able to comply. (Answer at 2; Exhibit 1). After Respondent's second failure to comply, the LFCP referred the matter to the ODC on January 5, 2009. (Exhibit 1).
5. The ODC contacted the Respondent and arranged for an audit to be performed on January 30, 2009, by Master Sidlow & Associates, P.A. (Answer at 2). By letter dated February 9, 2009, ODC sent Respondent a copy of the audit report which showed that Respondent was still not in compliance with Rule 1.15 and that the previously noted deficiencies had not been corrected. (Answer at 2; Exhibit 6). The audit showed that Respondent was still using the same deficient procedures for maintaining his books and records he had been using since January 1, 2004. (Exhibit 2). Among other things, Respondent had yet to reconcile his escrow account, and he was still using the same manual check book to manage his accounts. (Tr. at 11).
6. Sometime subsequent to February 24, 2009, but before April 24, 2009. Respondent retained the services of an experienced bookkeeper to assist him in correcting the deficiencies in his law practice books and records. (Tr. at 49-50; Exhibit 7).
7. On April 24, 2009, the LFCP auditor performed a follow-up audit, which showed that the Respondent had finally corrected the prior deficiencies in the maintenance of law practice books and records and that bank accounts had been resolved, and the accounts were reconciled through March 31, 2009. (Answer at 3; Exhibit 3).
8. With the Respondent's bank accounts being reconciled through March 31, 2009, the LFCP auditor was able to determine that there were a number of problems with Respondent's books and records, including:
a) Some of Respondent's fiduciary accounts had negative client balances that had existed since February 2004 and were not covered in full until March 2009;
b) Respondent's fiduciary account had contained earned attorneys' fees that should have been transferred to his operating account and were therefore considered to be commingled with client funds; and
c) The non-fiduciary account was incorrectly titled and had a non-sufficient funds charge in December 2004. (Exhibit 3).
9. For years 2005, 2006, 2007, and 2008, respondent had signed and filed Certificates of Compliance with the Delaware Supreme Court, wherein Respondent certified that he was in compliance with Rule 1.15 when he was not. (Answer at 3; Exhibit 4). These inaccurate responses included statements that:
(a) the cash receipts journals had been prepared for the escrow and operating accounts, when they had not been prepared;
(b) the client subsidiary ledgers had been prepared for the escrow account, when they had not been prepared:
(c) the bank reconciliations had been prepared for the escrow and operating accounts, when they had not been prepared; and
(d) the escrow account reconciled end-of-month cash balance agreed with the total of the client balance listing of the client subsidiary ledger, when the reconciliation and client subsidiary ledger preparation processes had not been completed so as to allow this determination to have been made on a monthly basis. (Answer at 3-4).

COUNT ONE: RESPONDENT FAILED TO SAFEGUARD CLIENT FUNDS BY ACCUMULATING NEGATIVE ESCROW ACCOUNT BALANCES
Rule 1.15(a) requires, in pertinent part, that a lawyer "shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property" and that property of clients or third persons must be appropriately safeguarded.
Respondent admitted that he violated Rule 1.15(a) by failing to transfer earned attorneys' fees from his escrow account to his operating account in a timely manner, and by failing to ensure that negative client balances in the escrow account were not promptly identified and corrected on a monthly basis. (Answer at 4). This was confirmed by LFCP in the audit performed after March 31. 2009. (Exhibit 3).

COUNT TWO: RESPONDENT FAILED TO MAINTAIN REQUIRED BOOKS AND RECORDS
Rule 1.15(d) requires that a lawyer engaged in the private practice of law must maintain financial books and records and bank accounts on a current basis and in compliance with specified requirements.
Respondent admitted that he violated Rule 1.15(d) by failing to properly maintain his law practice books and records and bank accounts from January 1, 2004, through December 31, 2008. (Answer at 4-5). This was confirmed by the audits performed by LFCP on April 22, 2008, January 30, 2009, and post-March 31, 2009. (Exhibits 1, 2, 3, and 6).

COUNT THREE: RESPONDENT ENGAGED IN CONDUCT INVOLVING DISHONESTY, FRAUD, DECEIT OR MISREPRESENTATION
Rule 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."
Respondent admitted that he violated Rule 8.4(c) by filing Certificates of Compliance for 2005, 2006, 2007, and 2008 with the Delaware Supreme Court which contained inaccurate representations that his law practice bank accounts were maintained in compliance with Rule 1.15. (Answer at 5; Exhibit 4).

COUNT FOUR: RESPONDENT ENGAGED IN CONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE
Rule 8.4(d) states that "it is professional misconduct for a lawyer to engage in conduct prejudicial to the administration of justice."
The Delaware Supreme Court relies upon the representations made by attorneys in the Certificates of Compliance filed with their Annual Registration Statements each year in the administration of justice governing the practice of law in Delaware. Respondent admitted that he violated Rule 8.4(d) by filing Certificates of Compliance for 2005, 2006, 2007, and 2008 with the Delaware Supreme Court which contained inaccurate representations that his law practice bank accounts were maintained in compliance with Rule 1.15.

III. RECOMMENDATION FOR SANCTIONS
The Panel now turns to its decision as to the proper sanctions for Respondent's conduct.
Rule 9(d)(4) of the Board's Procedural Rules provides in part that: "If the Board initially finds that the Respondent has engaged in professional misconduct, the Board may make a separate finding as to the appropriate disciplinary sanction." The Board is given specific guidance in its determination of the appropriate sanction:
The objectives of the lawyer disciplinary system are to protect the public, to protect the administration of justice, to preserve confidence in the legal profession, and to deter other lawyers from similar misconduct. To further these objectives and to promote consistency and predictability in the imposition of disciplinary sanctions, the Court looks to the ABA Standards for Imposing Lawyer Sanctions as a model for determining the appropriate discipline warranted under the circumstances of each case. The ABA framework consists of four key factors to be considered by the Court: (a) the ethical duty violated; (b) the lawyer's mental state; (c) the extent of the actual or potential injury caused by the lawyer's misconduct; and (d) aggravating and mitigating factors." In re Bailey, 821 A.2d 851, 866 (Citations omitted): see also In re Fountain, 878 A.2d 1167, 1173 (Del. 2005).
The Panel now considers those four enumerated factors. After reviewing the first three factors, the Panel will then review the aggravating and mitigating circumstances to determine if an increase or decrease in the sanction is warranted. In re Steiner, 817 A.2d 793, 796 (Del. 2003).

1. Ethical Duties Violated.
As previously recited, ODC alleged, Respondent admitted, and the Panel determined that the Respondent committed misconduct in violation of Professional Rules of Conduct 1.15(a) (failure to safeguard client funds), 1.15(d) (failure to properly maintain financial books and records), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation), and 8.4(d) (engaging in conduct that is prejudicial to the administration of justice governing the practice of law in Delaware). Under the ABA Standards, this misconduct constituted violations of duties owed by Respondent to clients (Rules 1.15 and 8.4(c)), and violations of duties owed by Respondent to the legal system (Rule 8.4(d)). See ABA Standard 6.0. As a result of these violations, numerous ABA Standards for Imposing Lawyer Sanction (the "ABA Standards") must be evaluated to determine the appropriate sanction.

2. The Lawyer's Mental State.
Under the ABA Standards, "mental state" is defined by levels of culpability. The most culpable mental state is "intent" which is when a lawyer acts with the conscious objective or purpose to accomplish a particular objective. The next most culpable mental state is "knowledge" which is when a lawyer acts with conscious awareness of the nature or attendant circumstances of his conduct both without the conscious objective or purpose to accomplish a particular result. The least culpable mental state is "negligence" which is when a lawyer fails to become aware of a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation. See ABA Standards at 6.
The ODC contends that Respondent's failure to maintain his financial books and records appropriately was more than mere negligence, and that Respondent acted with knowledge in that there was a sustained and systematic disregard to his obligations to retain books and records. (Tr. at 69). Respondent contends that his conduct with respect to all matters alleged in the Petition was negligent. No expert evidence was presented with respect to the state of mind of Respondent during the relevant time period with respect to the underlying activities that gave rise to the violations set forth above,
The Panel finds that the Respondent acted with "knowledge" in that Respondent was consciously aware of his obligations to properly manage a law office and accurately report to the Court in the annual Certificate of Compliance, and yet he took a "head in the sand" approach to those obligations without any particular objective or purpose to accomplish a particular result other than to provide services to his clients. While the Panel finds that his objective of serving clients is clearly proper, the Respondent's execution of his obligations to the Court was woefully lacking. Respondent admitted that "he did not give the due care and attention expected or required in completing his Certificate," yet he denied that the inaccuracies were intentional. (Answer at 5).
Respondent also admitted that he was indifferent to his obligations to comply with Rule 1.15 for maintaining proper books and records and Rule 8.4(d) when making representations to the Court about his Certificate of Compliance. That is unacceptable. As Respondent testified, "I felt that the Certificate of Compliance dealt with an intent to act improperly with regard to clients and their funds, and I never had that feeling that I was doing that. And I certainly didn't know the details of Rule 1.15 and probably did not take the due care properly. I was naive as to whether the work I was doing would contribute to some sanction.... I was preoccupied with my practice and not with the niceties of the financial world as to the law practice." (Tr. at 45-46).
After reviewing the evidence, the Panel finds that Respondent possessed the requisite knowledge in that he was aware of the nature and circumstances of his actions or inactions that formed the basis for the violations set forth above. The Panel has concluded that Respondent acted with a sustained and systematic disregard with respect to his obligations regarding his law office books and records. Indeed, prior to the April 22, 2008 audit, Respondent managed all of the affairs of his solo practice using a manual checkbook system with no office manager, no business manager, and no accountant. The Panel also finds that there is no evidence that Respondent had actual knowledge or conscious awareness of the recordkeeping deficiencies constituting violations of Rule 1.15(d) prior to the April 22, 2008 compliance audit performed by LFCP. See In re Doughty, 832 A.2d 724 (Del. Supr. 2003). Yet he should have been so aware.

3. The Actual or Potential Injury Caused by Respondent's Misconduct.
Respondent's misconduct in this case violated his duties to his clients, to the legal system, and to the profession. Although no actual injury resulted, that does not mean that the risk to the Respondent's clients in particular and the public in general were insignificant. As the Supreme Court has stated, "A lawyer's duty to maintain proper books and records exist for the purpose of protecting not only the lawyer but the lawyer's clients, and the failure to fulfill that duty presents serious risks to the lawyer's clients, even if no actual harm results." In re Benson, 774 A.2d 258, 262-63 (Del. 2001).
Under ABA Standard 7.3, a reprimand is generally appropriate when a lawyer engages in conduct that is a violation of a duty owed as a professional, and causes little or no injury or potential injury to a client, the public, or the legal system and the purpose of the lawyer discipline will be best served by imposing a public sanction that helps educate the lawyer and deter future violations Under ABA Standard 6.13, a reprimand is appropriate where a lawyer is negligent either in determining whether statements or documents are false and causes injury or potential injury to the legal proceeding.
In reviewing the applicable case law, the Panel finds the Court's analysis in In re Bemon, 774 A. 2d 258, 262-64 (Del. 2001) very instructive. In that case, the Supreme Court found that Benson violated duties owed to her clients by failing to properly maintain her books and records. She also violated duties owed to the legal system and to the profession for certifying to the Supreme Court for three consecutive years that her books and records were in compliance when, in fact, her books were not in compliance. While the Court accepted the Board's finding that Benson's misconduct was not intentional, the Court noted that it was "concerned that her apparent inattentiveness to her obligations to the Court... continued for so many years." Moreover, the Court found that even though Benson's violations did not result in any injury to her clients, her careless record keeping had the potential to cause injury because of the difficulty in ascertaining that all client funds in fact were being properly maintained.
The Court in Benson rejected the Board's recommendation of a private sanction and instead issued a public sanction because: (i) Benson's violations were not isolated incidents but continued without correction for several years; (ii) Benson's violations were of a type that could be readily repeated, and a public sanction, in addition to probation, will serve as an important preventive measure; (iii) public discipline affords the Court the opportunity to inform not only other members of the Bar but the general public that the Court takes very seriously a lawyer's obligation to maintain orderly books and records and to fulfill tax obligations. The Court in Benson also stated:
In our view, a public sanction will deter other lawyers from similar misconduct. Moreover, this Court's means of monitoring a lawyer's compliance with record keeping obligations is dependent upon the lawyer's accurate, written representations as part of the annual registration process. Even though Benson did not make intentional misrepresentations to the Court in this case, she clearly failed to exercise the required care and attention in making her annual certifications.

Benson, 774 A. 2d at 262-63.
As stated above, a public sanction affords the Court the opportunity to underscore how serious the Court considers a lawyer's obligation to maintain orderly books and records. The Panel finds that a public sanction in this instance will also serve as an important preventive measure in situations such as this where the violations could be readily repeated without prompt detection. A public sanction also puts clients on notice of past problems and allows them to take any steps deemed necessary to protect their own interests.

4. Aggravating and Mitigating Factors.
ABA Standard Section 9.1 provides that aggravating (Section 9.22) and mitigating (Section 932) circumstances should also be considered, to increase or decrease the degree of discipline to be imposed.

Section 9.22 Aggravating factors include:
A. ABA Standard Section 9.22(a)  "Prior Disciplinary Offenses"
There is no evidence in the record that this aggravating factor exists.
B. ABA Standard Section 9.22(b)  "Dishonest or Selfish Motive"
There is no evidence in the record that this aggravating factor exists.
C. ABA Standard Section 9.22(c)  "Pattern of Misconduct"
This aggravating factor is found to exist with respect to the violations identified above.
D. ABA Standard Section 9.22(d)  "Multiple Offenses"
This factor is clearly met with the Respondent admitting to have violated four counts of this series of charges.
E. ABA Standard Section 9.22(e)  "Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Agency"
There is no evidence in the record that this aggravating factor exists.
F. ABA Standard Section 9.22(t)  "Submission of False Evidence, False Statements, or other Deceptive Practices During the Disciplinary Process"
There is no evidence in the record that this aggravating factor exists.
G. ABA Standard Section 9.22(g)  "Refusal to Acknowledge Wrongful Nature of Conduct"
There is evidence in the record to demonstrate that Respondent has recognized the wrongful nature of his conduct, although the Panel is not convinced that Respondent fully appreciates the seriousness of the allegations against him and the purported violations. At times during the September 9, 2009 hearing, the Respondent demonstrated a lackadaisical attitude toward his obligations in particular with respect to the management of his law office books and records and Rules 1.15 and 8.4.
H. ABA Standard Section 9.22(h)  "Vulnerability of the Victim"
There is no evidence in the record that this aggravating factor exists.
I. ABA Standard Section 9.22(i)  "Substantial Experience in the Practice of Law"
There is evidence of Respondent's substantial experience in the practice of law  he was admitted as a member of the Delaware Bar in 1967.
J. ABA Standard Section 9.22(j)  "Indifference to Making Restitution"
There is no evidence in the record that this aggravating factor exists.
K. ABA Standard Section 9.22(k)  "Illegal Conduct, Including that Involving the Use of a Controlled Substance."
There is no evidence in the record that this aggravating factor exists.

Section 9.32 Mitigating Factors include:
A. ABA Standard Section 9.32(a)  "Absence of Prior Disciplinary Record"
There is evidence in the record that this mitigating factor exists. This was Respondent's first offense.
B. ABA Standard Section 9.32(b)  "Absence of a Dishonest or Selfish Motive"
There is evidence in the record that this mitigating factor exists.
C. ABS Standard Section 9.32(c)  "Personal or Emotional Problems"
There is no evidence in the record that this mitigating factor exists.
D. ABS Standard Section 9.32(d)  "Timely Good Faith Effort to Make Restitution or to Rectify Consequences of Misconduct"
There is no evidence in the record that this mitigating factor exists. Respondent was advised of the deficiencies in the April 22, 2008 compliance audit and failed to take any significant affirmative steps to rectify those deficiencies until almost a year later.
E. ABS Standard Section 932(e)  "Full and Free Disclosure to Disciplinary Board or Cooperative Attitude toward Proceedings"
There is evidence in the record that Respondent provided full and free disclosure to the Panel and ODC.
F. ABS Standard Section 9.32(f)  "Inexperience in the Practice of Law"
This mitigating factor has no application.
G. ABS Standard Section 9.32(g)  "Character or Reputation"
No evidence was presented that would have character or reputation a factor for or against increased sanctions.
H. ABS Standard Section 9.32(h)  "Physical Disability"
There is no evidence in the record that this mitigating factor exists.
I. ABS Standard Section 9.32(i)  "Mental Disability or Chemical Dependency, Including Alcoholism or Drug Abuse"
There is no evidence in the record that this mitigating factor exists.
J. ABS Standard Section 9.32(1)  "Delay in Disciplinary Proceedings"
There is no evidence in the record that this mitigating factor exists.
K. ABS Standard Section 9.32(k)  "Imposition of Other Penalties or Sanctions"
ODC argues that Respondent should gel a Public Reprimand and Public Probation, while the Respondent argues that he should receive a Private Reprimand and Private Probation.
L. ABS Standard Section 9.32(1)  "Remorse"
There is evidence in the record that this mitigating factor exists to a small degree. While the Respondent testified that he was very concerned that he might have misled the Court, he also testified that he does not think that there were any material problems or violations of the Rules since he did not lake client funds. His previously noted lackadaisical attitude makes it difficult to find that he showed much remorse.
M. ABS Standard Section 9.32(m)  "Remoteness of Prior Offenses"
There is no evidence in the record that this mitigating factor exists.

FINDINGS
As noted above, before evaluating the aggravating and mitigating circumstances, the Panel determined that a public sanction and a public probation period would be consistent with the Supreme Court's prior decision in other cases involving similar disciplinary charges. The Panel finds that the aggravating factors offset the mitigating factors. Namely, Respondent's substantial experience in the practice of law, the multiple offenses, and the Respondent's attitude toward the offenses offset the mitigating factors, namely, no prior disciplinary record, extensive remedial efforts taken to correct problem (albeit it not very timely), full cooperation with the ODC and the Panel, and no injury to any client.
Since the aggravating factors neutralize the mitigating factors, the Panel finds that a public sanction would serve the purpose of providing notice to the legal community and the public that violations with respect to maintenance of proper financial books and records will be dealt with severely by the Board and by the Delaware Supreme Court. Finally, the Panel believes that imposition of the sanction of public reprimand in this matter is consistent with Delaware Supreme Court precedent in similar matters. See In re Benson, 774 A.2d 258, 262-263 (Del. Supr. 2001). See also, In re O'Brien, 888 A.2d 232 (Del. Supr. 2005); In re Froelich, 838 A.2d 117 (Del. Supr. 2003); and In re Doughty, 832 A. 2d 724 (Del. Supr. 2003). Each of these cases involved violations relating to financial recordkeeping and reporting

CONCLUSION
The Panel finds that Respondent should be publicly reprimanded for his violations of Rules 1.15(a), 1.15(d), 8.4(c), and Rule 8.4(d) as well as serve a public two-year period of probation, subject to the following terms:
(a) Respondent shall have completed an audit by a licensed certified public accountant for his Certificates of Compliance, reporting the status of his compliance or lack thereof with the requirements of Rule 1.15 and Rule 1.15A, and shall file each annual Certificate of Compliance by no later than the due date;
(b) Respondent shall also provide the ODC with a timely written confirmation that he has filed each annual Certificate of Compliance with the required precertification.
(c) Respondent shall cooperate fully and promptly with the ODC in its efforts to monitor compliance with his probation, including any audit performed at the request of the ODC or otherwise;
(d) Respondent shall also cooperate with the ODC's investigation of any allegations of unprofessional conduct that may come to the attention of the ODC;
(e) Upon request of the ODC, the Respondent shall provide authorization for release of information and documentation to verify compliance with these conditions;
(f) the Respondent shall pay the costs of this disciplinary proceeding pursuant to Procedural Rule 27 promptly upon being presented with a statement of these costs by the ODC. The costs to be paid by the Respondent will include without limitation the cost of the Lawyers' Fund follow-up audits; and
(g) Respondent shall meet with the Professional Guidance Committee for assistance and guidance in managing his solo practice of law and he shall complete six hours of MCLE programming addressing books and records, law office management, and related issues no later than the due date for filing his next Certificate of Compliance.
NOTES
[1] The transcript of the September 9, 2009 hearing will be cited herein as "Tr. at ___."