IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN THE MATTER OF A MEMBER OF | § | |
| THE BAR OF THE SUPREME COURT | § | |
| OF THE STATE OF DELAWARE: | § | No. 5, 2017 |
| | § | |
| TABATHA L. CASTRO | § | |

Submitted: April 5, 2017
Decided: April 12, 2017

Before **STRINE**, Chief Justice; **VALIHURA** and **SEITZ**, Justices.

## **O R D E R**

This 12th day of April 2017, it appears to the Court that:

(1)     This is a lawyer disciplinary proceeding.  On January 3, 2017, the Board on Professional Responsibility ("the Board") filed a report with this Court recommending, among other things, that the respondent, Tabatha L. Castro, be publicly reprimanded and placed on a period of probation for two years.  A copy of the Board's report and recommendation is attached to this order.

(2)     The Office of Disciplinary Counsel ("ODC") did not file any objections to the Board's report.  Castro filed objections, contending that the Board's recommendation of a public reprimand was based on its misapplication of the ABA Standards for Imposing Lawyer Sanctions ("the ABA Standards") and its failure to give due weight to the mitigating circumstances in her case.  In response, the ODC asserts that the Board did not err in holding that a public reprimand is the

presumptive sanction under the circumstances and that, even considering the mitigating factors, a reduction of the sanction was not warranted and that a public reprimand was consistent with this Court's prior cases.

(3)    The Court has considered the matter carefully.  Castro admitted that she failed to properly maintain her firm's books and records for three consecutive years, that she filed inaccurate Certificates of Compliance with this Court for three consecutive years, and that she failed to give her flat fee clients proper notice that the fee was refundable if not earned by her.  We agree with the Board's conclusion that a public reprimand was the presumptive sanction under the ABA Standards. We also agree that, even considering the mitigating circumstances, a reduction of the sanction was not warranted, and a public reprimand is more consistent with our precedent.

(4)    In a case involving similar recordkeeping violations, in which we found the mitigating factors to be "substantial,"[1] we nonetheless were unpersuaded that any lesser sanction than a reprimand was justified.[2]  We held in that case:

> [A] public sanction affords the Court the opportunity to underscore how serious the Court considers a lawyer's obligation to maintain orderly books and records.  The failure to fulfill this obligation presents serious risks of harm to a lawyer's clients.  A public sanction also serves as an important preventive measure in cases such as this in which the violations could be readily repeated without prompt

---

[1] *In re Doughty*, 832 A.2d 724, 736 (Del. 2003).
[2] *Id.*

2

detection. A public sanction puts clients on notice of past problems and allows them to take any steps deemed necessary to protect their own interests.[3]

(4) Thus, we accept the Board's findings and recommendation of a public reprimand with a two-year period of probation. We incorporate the Board's findings and recommendation by reference.

NOW, THEREFORE, IT IS ORDERED that the Board's report is hereby ACCEPTED. Castro is hereby reprimanded and placed on probation for two years subject to the following conditions:

a) Before filing both her 2018 and 2019 Certificate of Compliance, Castro shall be audited by a licensed CPA who is knowledgeable of the accounting procedures used for audits under Rule 1.15(d) and has attended the training offered by the Lawyers' Fund for Client Protection. The auditor must report on the status of Castro's compliance or non-compliance.

b) Castro shall provide the ODC with a copy of the required pre-certification.

c) Castro shall pay the costs associated with the investigation of this matter by the ODC, including the costs of the Lawyers' Fund audit.

BY THE COURT:

/s/ Leo E. Strine, Jr.

Chief Justice

---

[3] *Id.* at 736-37.

3

EFiled: Jan 03 2017 02:29PM EST
Filing ID 60014876
Case Number 5,2017

## BOARD ON PROFESSIONAL RESPONSIBILITY
## OF THE SUPREME COURT OF THE STATE OF DELAWARE

In the Matter of a            *
Member of the Bar of the     *    *CONFIDENTIAL*
Supreme Court of Delaware,   *
                             *    **Board Case No. 112749-B**

TABATHA L. CASTRO,        *
                             *
     Respondent.         *

### REPORT OF THE BOARD ON THE PETITION FOR DISCIPLINE

I. *Procedural Background*

Pending before a panel of the Board on Professional Responsibility (the "Board") is a Petition for Discipline filed by the Office of Disciplinary Counsel (the "ODC") on August 3, 2016 in Board Case No. 112749-B (the "Petition") against Tabatha L. Castro, Esquire ("Respondent"), a member of the Bar of the Supreme Court of the State of Delaware. The Petition alleged violations of Rules 1.5(f), 1.15(a), 1.15(d), 5.3, 8.4(c), and 8.4(d). Respondent, through her counsel, Charles Slanina, Esquire, filed an Answer to the Petition on August 23, 2016 (the "Answer").

The Board convened a hearing (the "Hearing") by the panel on October 20, 2016.[1] The members of the panel of the Board were Melissa Thoroughgood, Gerald J. Hager, Esquire, and Seth L. Thompson, Esquire, Chair (the "Panel"). Patricia Bartley Schwartz, Esquire represented the ODC. Charles Slanina, Esquire represented the Respondent.

At the outset of the Hearing, the ODC moved to amend the Petition to strike Count Four, relating to Rule 5.3, on the merits. (Tr. at p. 4.) The Respondent had no objection. (Tr. at pp. 4-5.) Also without objection, the ODC amended Paragraph 14 of the Petition to insert the word "client" between "negative" and "balances." (Tr. at p. 5.) As a result, Paragraph 14 provides,

---

[1] The transcript of the October 20, 2016 hearing is cited herein as "Tr. at p. ___."

"By failing to safeguard client funds, which resulted in negative client balances in Fiduciary Account #0208725606 as noted in the 2013 Gunnip Report, and 2015 LFCP[2] Report, Respondent violated **Rule 1.15(a)**." (emphasis in original). Based on the amendment to Paragraph 14 of the Petition, the Respondent amended the Answer's Paragraph 14 to "Admitted." (Tr. at p. 6.) Additionally, the Respondent amended the Answer's Paragraph 12, regarding a violation of Rule 1.5(f), to "Admitted," based on clients who had paid a flat fee but were not given a fee agreement. (Tr. at pp. 7-9.) The amendments resulted in a five-count Petition, with the Respondent admitting all five counts.

At the Hearing, the Panel received into evidence a joint exhibit book. The Panel also heard testimony from the Respondent. The ODC and the Respondent also stipulated to a proffer of testimony on the Respondent's behalf from Perry Goldlust, Esquire, a member of the Delaware Bar, indicating that Attorney Goldlust has known the Respondent for a number of years and that he knows the Respondent to have good character and reputation with the Bar. (Tr. at pp. 54-55.)

II. *Factual Findings*

Since the Respondent's Answer had admitted the violations alleged in the Petition, the ODC, the Respondent, and the Panel treated the hearing as relating primarily to sanctions. (Tr. at pp. 9–10). Nevertheless, the Panel received testimony from the Respondent and the exhibits relating to factual circumstances surrounding the violations. The exhibits consisted of: 1) an Independent Accountant's Report from Master Sidlow Associates dated November 4, 2013; 2) a 2013 Immigration Fee Agreement; 3) the Respondent's 2013 Delaware Supreme Court Certificate of Compliance; 4) an Independent Accountant's Report from Gunnip and Company dated June 30, 2014; 5) the Respondent's 2014 Delaware Supreme Court Certificate of Compliance; 6) an

---

[2] The Lawyers' Fund for Client Protection.

Independent Accountant's Report from Master Sidlow Associates dated December 18, 2015; 7) a 2015 Will Fee Agreement; and 8) ) the Respondent's 2015 Delaware Supreme Court Certificate of Compliance.

Based on the factual allegations of the Petition admitted by the Respondent and the credible uncontroverted testimony received at the hearing from the Respondent and the submitted exhibits, the Board makes the factual findings which follow.

1. The Respondent is a member of the Bar of the Supreme Court of Delaware. She was admitted to the Bar in 2004. At all times relevant to the Petition, the Respondent was engaged in the private practice of law in Wilmington, Delaware. (Petition and Answer ¶ 1; Tr. at p. 16.) In October 2006, the Respondent started The Castro Firm. (Tr. at p. 16.) From that time through the day of the firm's last audit, the Respondent was in charge of the firm's books and records. (Tr. at pp. 16-17.)

2. A random compliance audit of the Respondent's financial books and records was conducted at the Respondent's law offices for the six months ending September 30, 2013 by the auditor for the Lawyer's Fund for Client Protection ("LFCP"). (Petition and Answer ¶ 3; Tr. at p. 17.)

3. The LFCP provided the ODC with a report (the "2013 Master Sidlow Audit Report") concerning the compliance audit for the six months ending September 30, 2013, and a copy of the 2013 Master Sidlow Audit Report was admitted without objection at the hearing as ODC Exhibit 1. (Petition and Response ¶ 3; Tr. at p. 17.)

4. The 2013 Master Sidlow Audit Report included the following findings relating to the Respondent's books and records:

Fiduciary Account #0208725606

    (a) There were two checks outstanding for longer than six months in the time period reviewed;

    (b) The June and September bank reconciliations did not agree to the related general ledger balances;

    (c) The subsidiary ledger did not reflect any attorney funds. Consequently, the completeness of fiduciary transactions and balances could not be ascertained;

    (d) The reconciled end of month cash balances did not agree to total client funds in any of the months reviewed;

    (e) There were negative balances on the monthly listing of client funds during the time period reviewed;

    (f) There were three balances that were over six months old for completed cases;

    (g) The fiduciary account contained earned attorney's fees;

    (h) One out of the five retainer agreements provided did not state "the fee is refundable if not earned"; and

Fiduciary Account #0208725739

    (i) The attorney did not prepare a monthly listing of client balances.

(Petition and Answer ¶ 4; Tr. at p. 18.)

5. The Respondent filed her 2013 Delaware Supreme Court Certificate of Compliance, which was admitted without objection at the hearing as ODC Exhibit 2. (Petition and Answer ¶ 5; Tr. at p. 20.) For Items 2.5, 2.8, 2.9, and 2.12, the Respondent answered "Yes" but should have answered "No." (Petition ¶ 5; Tr. at p. 21.)

6. The Respondent provided the ODC with an Independent Accountant's Report from Gunnip and Company dated June 30, 2014 (the "2014 Gunnip Audit Report"), and a copy of which was admitted without objection at the hearing as ODC Exhibit 4. (Petition and Answer ¶ 6; Tr. at pp. 21-22.)

7. The 2014 Gunnip Audit Report included the following findings relating to the Respondent's books and records:

Fiduciary Account #0208725606

(a) There were seven checks outstanding for longer than six months in the time period procedures were performed;

(b) The March and May bank reconciliations did not agree to the corresponding general ledger balances;

(c) There were negative balances on the monthly listing of client funds during the time period reviewed;

(d) There were earned attorney fees in the client balances of June 30, 2014; and

(e) One out of the five retainer agreements provided did not state "the fee is refundable if not earned".

(Petition and Answer ¶ 7; Tr. at pp. 22-23.)

8. The Respondent filed her 2014 Delaware Supreme Court Certificate of Compliance, which was admitted without objection at the hearing as ODC Exhibit 5. (Petition and Answer ¶ 8; Tr. at p. 23.) For Items 2.5, 2.9, and 2.12, the Respondent answered "Yes" but should have answered "No." (Petition ¶ 8; Tr. at p. 24.)

9. The LFCP provided the ODC with a report (the "2015 Master Sidlow Audit Report") concerning the compliance audit for the six months ending October 30, 2015, and a copy of the

2015 Master Sidlow Audit Report was admitted without objection at the hearing as ODC Exhibit 6. (Petition and Answer ¶ 9; Tr. at p. 25.)

10. The 2015 Master Sidlow Audit Report included the following findings relating to the Respondent's books and records:

Fiduciary Account #0208725606

    (a) The firm exceeded the $2,000 limit of attorney funds held in the fiduciary account;

    (b) There were negative balances in the client funds list;

    (c) The fiduciary account contained $2,165 of earned fees;

    (d) Two of the five retainer agreements selected did not contain clauses stating that the fee is refundable if not earned or outlining the basis under which the fee shall be considered earned; and

Fiduciary Account #0208725739

    (e) There was one check outstanding for longer than six months.

(Petition and Answer ¶ 10; Tr. at pp. 25-26.)

11. The Respondent filed her 2015 Delaware Supreme Court Certificate of Compliance, which was admitted without objection at the hearing as ODC Exhibit 8. (Petition and Answer ¶ 8; Tr. at p. 23.) For Items 2.5, 2.9, and 2.12, the Respondent answered "Yes" but should have answered "No." (Petition ¶ 11; Tr. at p. 28.)

12. Neither the 2013 Immigration Fee Agreement, admitted without objection at the hearing as ODC Exhibit 5, nor the 2015 Will Fee Agreement, admitted without objection at the hearing as ODC Exhibit 7, contained clauses indicating the fee is refundable if not earned. (Petition and Amended Answer ¶ 12; Tr. at pp. 20, 27.)

III. *Standard of Proof*

Allegations of professional misconduct must be established by the ODC by clear and convincing evidence.[3]

IV. *Findings on Violations of the Rules*

Based on the Respondent's admissions and the evidence provided at the Hearing, the Panel finds that the ODC has met its burden. Specifically, the Petition alleges, and the Answer, as amended, admits, five violations of five separate rules of the Delaware Lawyers' Rules of Professional Conduct as follows:

COUNT ONE: RESPONDENT FAILED TO INCLUDE "FEE IS REFUNDABLE IF NOT EARNED" IN ALL ADVANCE FEES AGREEMENTS IN VIOLATION OF RULE 1.5(f)

Rule 1.5(f) states an attorney may "require the client to pay some or all of the fee in advance of" the representation, provided the attorney "shall provide the client with a written statement that the fee is refundable if it is not earned." By failing to provide clients who had paid a flat fee with a written fee agreement containing such a written statement, the Respondent violated Rule 1.5(f). (Petition and Amended Answer ¶ 12.)

COUNT TWO: RESPONDENT FAILED TO IDENTIFY AND SAFEGUARD CLIENT FUNDS IN VIOLATION OF RULE 1.15(a)

Rule 1.15(a) requires that a lawyer holding the property of clients or third persons shall identify and appropriately safeguard such property, and shall maintain complete records of such property for a period of five years after the completion of the events that they record. By failing to safeguard client funds, which resulted in negative client balances, the Respondent violated Rule 1.15(a). (Petition and Amended Answer ¶¶ 13-14.)

COUNT THREE: RESPONDENT FAILED TO MAINTAIN BOOKS AND RECORDS IN VIOLATION OF RULE 1.15(d)

---

[3] Delaware Lawyers' Rule of Disciplinary Procedure 15(c).

Rule 1.15(d) sets forth detailed and specific requirements for the maintenance of attorneys' books and records and handling of practice-related funds. The Respondent failed to properly maintain her books and records in violation of Rule 1.15(d) in that: (1) the Respondent's bank reconciliations did not agree to the related general ledger balances; (2) the Respondent's reconciled end of month cash balances did not agree with total client funds; (3) there were negative balances on the monthly listing of client funds; (4) there were balances over six months old; (5) the Respondent failed to prepare a monthly listing of client balances; and (6) the Respondent failed to withdraw earned attorney fees from a trust account. (Petition and Answer ¶¶ 15-16.)

COUNT FOUR (FOLLOWING THE ORIGINAL COUNT FOUR BEING STRUCK): RESPONDENT ENGAGED IN CONDUCT INVOLVING MISREPRESENTATION IN VIOLATION OF RULE 8.4(c)

Rule 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." By filing with the Delaware Supreme Court in 2013, 2014, and 2015 Certificates of Compliance which included misrepresentations relating to the Respondent's maintenance of her law practice books and records, the Respondent violated Rule 8.4(c). (Petition and Answer ¶¶ 19-20.)

COUNT FIVE (FOLLOWING THE ORIGINAL COUNT FOUR BEING STRUCK): RESPONDENT ENGAGED IN CONDUCT PREJUDICIAL TO THE ADMINISTRATION OF JUSTICE IN VIOLATION OF RULE 8.4(d)

Rule 8.4(d) provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." The Delaware Supreme Court relies upon the representations made by attorneys in the Certificates of Compliance filed each year in the administration of justice governing the practice of law in Delaware. By filing with the Delaware

Supreme Court in 2013, 2014, and 2015 Certificates of Compliance which included misrepresentations relating to the Respondent's maintenance of her law practice books and records, the Respondent violated Rule 8.4(d). (Petition and Answer ¶¶ 21-22.)

## V. *Recommended Sanction*

At the Hearing, the ODC contended that the presumptive sanction in this matter is a public reprimand with a two-year probation. (Tr. at p. 55.) The Respondent, through her counsel, contended that, no matter whether the starting point for the analysis on sanctions was a public reprimand or a private admonition, the appropriate end result is a private admonition with conditions including two years of compliance pre-certification by a licensed certified public accountant who has attended the LFCP training and sending copies of the accountant's certification to the ODC. (Tr. at pp. 68, 74.) For the reasons which follow, the Panel recommends that the Respondent be subject to a public reprimand and a two-year probation during which the Respondent must provide a pre-certification by a licensed certified public accountant who has attended the LFCP training with her Certificates of Compliance filed in 2017 and 2018, sending a copy of each pre-certification to the ODC.

## VI. *Rationale for Recommended Sanction*

In making its recommendation, the Panel has utilized the four-part framework set forth in the ABA Standards for Imposing Lawyer Sanctions (1991 as amended February 1992) ("ABA Standards"). To promote consistency and predictability in the imposition of disciplinary sanctions, the Delaware Supreme Court looks to the ABA Standards. *In re Doughty*, 832 A.2d 724, 735-736 (Del. 2003) (citations omitted). The ABA Standards' framework considers: (1) the ethical duty violated; (2) the lawyer's state of mind; (3) the actual or potential injury caused by the lawyer's misconduct; and (4) aggravating and mitigating factors. *Id.*

## 1. *The Ethical Duties Violated.*

As previously recited, the ODC alleged, the Respondent admitted, and the Panel determined that the Respondent committed misconduct in violation of Professional Rules of Conduct 1.5(f) (failing to provide the client with a written statement that the fee is refundable if it is not earned); 1.15(a) (failing to safeguard client funds); 1.15(d) (failing to properly maintain financial books and records); 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation); and, 8.4(d) (engaging in conduct that is prejudicial to the administration of justice governing the practice of law in Delaware). Under the ABA Standards, this misconduct constituted violations of duties owed by the Respondent to clients (Rules 1.5 and 1.15(a) and (d)), and violations of duties owed by Respondent to the legal system (Rules 8.4 (c) and (d)). *See* ABA Standards 4.0 and 6.0.

## 2. *State of Mind.*

The ODC contends, the Respondent agrees, and the Panel finds that the Respondent's mental state was negligence. (Tr. at pp. 56, 70.) The Panel accepts the Respondent's testimony that following the 2013 Master Sidlow Audit Report the Respondent ceased her relationship with her prior accounting firm and bookkeeper and retained a bookkeeper from Gunnip and Company and an accountant from the same company. (Tr. at pp. 38-39.) Unfortunately, rather than a "clean" audit, this resulted in the findings in the 2014 Gunnip Audit Report, which the Respondent then provided to the ODC. (Tr. at pp. 44-45.) The Respondent's first bookkeeper from Gunnip and Company became ill. (Tr. at pp. 38-39.) The 2015 Master Sidlow Audit Report found that there were additional issues in the six months ending October 30, 2015. (Petition and Answer ¶ 10; Tr. at pp. 25-26.) The Respondent began using her current bookkeeper in January 2016. (Tr. at p. 39.) The Respondent purchased and trained with

invoicing software that was recommended by her accountant. (Tr. at p. 39.) Additionally, the Respondent began meeting with the bookkeeper every other Friday to review the books. (Tr. at p. 40.)

Regarding the fee agreements, the Respondent hired staff and paid overtime to staff to remove the noncompliant fee agreement forms from the office server, to mitigate the possibility of using a noncompliant form going forward. (Tr. at p. 39.)

Regarding the misrepresentation on the Certificates of Compliance, the Respondent testified to her misunderstanding that the questions referred to the month in which she completed the Certificates of Compliance, rather than applying to the entire year. (Tr. at pp. 45-46.)

In light of the above, the Panel finds that the Respondent was negligent, which is defined in the ABA Standards as "the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation." *Compare In the Matter of Stull*, 685 A.2d 351, 2009 WL 4573243 (Del. 2009) (approving Board determination of acting with "knowledge" when attorney took "head in the sand" approach, despite being consciously aware of obligations to manage law office and accurately complete Certificates of Compliance).

3. *Actual or Potential Injury.*

There was no testimony or evidence presented that the misconduct actually harmed any of the Respondent's clients. However, actual injury is not required. *See, e.g., In re Benson*, 77 A.2d 258, 262 (Del. 2001). The potential for injury to a client existed, as funds might not have been available under different circumstances or a client might not have realized that the unearned portion of the fee was refundable. With respect to the legal system, potential injury existed, as the Court may have relied on the Certificates of Compliance.

## 4. *Presumptive Sanction.*

In the Panel's view, analysis of the ethical duties violated by the Respondent, the Respondent's state of mind and the potential for injury caused by Respondent's misconduct raise a presumptive sanction of public reprimand. The ethical duties violated direct the Panel to the following factors contained in the ABA Standards: 4.1 (for violations of Rule 1.15(a) and (d)), 4.6 (for violation of Rule 1.5(f)), and 6.1 (for violations of Rule 8.4(c) and (d)). Where, as in this matter, the conduct involves negligent acts with injury or potential injury, these provisions point generally to a public reprimand as an appropriate sanction. *See* ABA Standards 4.13, 4.63, 6.13 and 7.3. The presumptive sanction must then factor in the presence or absence of any mitigating or aggravating factors.

## 5. *Aggravating and Mitigating Factors.*

ABA Standard 9.22 sets forth the following non-exhaustive list of aggravating factors:

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;

(c) a pattern of misconduct;

(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of victim;

(i) substantial experience in the practice of law;

(j) indifference to making restitution;

(k) illegal conduct, including that involving the use of controlled substances.

(ABA Standard § 9.22)

The only aggravating factor referenced in argument was substantial experience in the practice of law, given the Respondent's ten years as a member of the Bar in charge of her firm's books and records. (Tr. at p. 60.) The ODC viewed the factor in a "lukewarm" manner. The Panel notes that some of the violations date back to when the Respondent had a few years less experience and, even assuming *arguendo* that the seven to ten years constitutes substantial experience in the practice, this aggravating factor alone does not justify imposition of a sanction more severe than a public reprimand, particularly in light of the numerous mitigating factors discussed below.

ABA Standard 9.32 sets forth the following non-exhaustive list of factors to be considered in mitigation:

(a) absence of a prior disciplinary record;

(b) absence of a dishonest or selfish motive;

(c) personal or emotional problems;

(d) timely good faith effort to make restitution or to rectify consequences of misconduct;

(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;

(f) inexperience in the practice of law;

(g) character or reputation;

(h) physical disability;

(i) mental disability or chemical dependency including alcoholism or drug abuse when:

(1) there is medical evidence that the Respondent is affected by a chemical dependency or mental disability;

(2) the chemical dependency or mental disability caused the misconduct;

(3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely;

(j) delay in disciplinary proceedings;

(k) imposition of other penalties or sanctions;

(l) remorse;

(m) remoteness of prior offenses.

(ABA Standard § 9.32)

At the Hearing, the Respondent's counsel contended to the Panel that factors (a), (b), (e), (g), (k), and (l) should be considered. (Tr. at pp. 69-71.) The ODC did not contest this contention. The Panel concurs. The evidence shows an absence of a prior disciplinary record, an absence of a dishonest or selfish motive, full and free disclosure to the ODC and a cooperative attitude toward proceedings, good character and reputation, the imposition of other penalties or sanctions in the form of time and expense in attempts to correct the issues, and remorse.

The Panel recognizes the Respondent's repeated efforts to address the issues and her view of the audits as a wake-up call, as well as for her willingness to share her experience at continuing legal education seminars in order to educate other members of the Bar. (Tr. at pp. 41-42.) Nevertheless, the Panel finds that these mitigating factors cannot negate the sanction of public reprimand. The Panel believes that a private sanction would not serve the purpose of providing notice to the legal community and the public that repetitive violations with respect to

maintenance of proper financial books and records are taken very seriously by the Board and the Delaware Supreme Court. *See In re Benson*, 774 A.2d 258, 262–263 (Del. 2001) (finding that a private sanction may be appropriate for an isolated record-keeping violation, but negligent failure for three consecutive years to determine whether Certificates of Compliance are accurate reflects a pattern of misconduct justifying public reprimand).

6. *Precedent.*

Lastly, the Panel believes that recommending a public reprimand in this matter is consistent with Delaware Supreme Court precedent. "[T]he objectives of any lawyer sanction should be to protect the public, to advance the administration of justice, to preserve confidence in the legal profession, and to deter other lawyers from similar misconduct." *In re Doughty*, 832 A.2d 724, 735-736 (Del. 2003) (citations omitted).

With regard to an appropriate sanction,[4] counsel for the Respondent directed the Panel's attention to two prior rulings of the Delaware Supreme Court in 2001: *In re Benson*, 77 A.2d 258 (Del. 2001), declining the Board's recommendation of a private admonition and, instead, imposing and public reprimand and a two-year probation for unintentional violations involving noncompliant books and records, unpaid taxes, and misrepresentations on Certificates of Compliance; and *In re MacPherson-Johnson*, 782 A.2d 265, 2001 WL 760866 (Del. 2001) approving the Board's recommendation of a public reprimand with two-year probation for

---

[4] The Panel also reviewed the other cases presented. The ODC submitted for the purposes of establishing a violation of Rule 1.5(f) *In re Pankowski*, 947 A.2d 2007 WL 4245472 (Del. 2007), *In re Vanderslice*, 55 A.3d 322 (Del. 2012), and *In re Barakat*, 99 A.3d 639 (2013). The ODC also submitted for the purpose of establishing a violation of Rule 1.15(a) *In re Solomon*, 745 A.2d 874 (Del. 1999). Additionally, the ODC provided *In re Doughty*, 832 A.2d 724 (2003), *In re Otlowski*, 976 A.2d 172, 2009 WL 1796083 (Del. 2009), *In re Froelich*, 838 A.2d 1117 (Del. 2003), and *In re Stull*, 985 A.2d 391, 2009 WL 4573243 (Del. 2009).

violations involving noncompliant books and records, unpaid taxes, and misrepresentations on Certificates of Compliance. (Tr. at pp. 64-66.)

The Panel inquired of the Respondent's counsel and the ODC of any post-2001 cases with similar violations to the case *sub judice* in which the Delaware Supreme Court imposed a private admonition. In response, the ODC noted that *In re Woods*, --- A.3d ----, 2016 WL 3886148 (Del. 2016), and *In re Martin*, 35 A.3d 419, 2011 WL 2473325 (Del. 2011), both involved attorneys who agreed to a private admonition and probation with conditions. The private admonitions became public when the attorney in each matter then violated a condition of the probation, specifically the need to provide a pre-certification for a Certificate of Compliance. While the these two cases involve violations of Rules 1.15 and 8.4, unlike the present matter, neither *In re Woods* nor *In re Martin* reflects the additional violation of Rule 1.5.

Regarding very recent precedent, the Panel also notes the Delaware Supreme Court's public reprimand and two-year probation with conditions in *In re Gray*, 2016 WL 7188110. In that matter, the Board noted the primary basis for declining to recommend a private admonition as the violations including failure to file and pay taxes, in addition to the books and records violations. In the matter at hand, while there is no violation for failing to file or pay taxes, there is an additional violation of Rule 1.5(f) due to the improper fee agreements.

## VII. *Conclusion.*

Based on the foregoing considerations, the Panel recommends as action of the Board that the sanctions set forth in Section V of this Report be imposed upon the Respondent, including the imposition of costs of these disciplinary proceedings, including the LFCP audit in 2015, pursuant to Delaware Lawyers' Rule of Disciplinary Procedure 27.

Respectfully submitted,

_____
Seth L. Thompson, Esquire, Chair
Date: 12/31/16

_____
Gerald J. Hager, Esquire
Date: 12/29/2016

_____
Melissa Thoroughgood
Date: 12/31/16